J-A14021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| KIMBERLY D. NEWDECK | |
| Appellant | No. 974 EDA 2016 |

Appeal from the Judgment of Sentence February 25, 2016
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001874-2015

BEFORE:  BENDER, P.J.E., BOWES, J. AND SHOGAN, J.

MEMORANDUM BY BOWES, J.:                **FILED SEPTEMBER 27, 2017**

Kimberly Newdeck appeals from the judgment of sentence of a flat ninety-day period of confinement[1] followed by three years of probation, imposed following her convictions for two counts of driving a bicycle under the influence (DUI).[2]   We vacate Appellant's judgment of sentence, vacate

---

[1]   The trial court states that Appellant "was made eligible for Recovery Court."  Trial Court Opinion, 11/10/16, at 4.  The record does not indicate what that entails.  To the extent the sentence is for a period of total confinement, it is illegal as those sentences must specify both a minimum and a maximum sentence.  42 Pa.C.S. § 9756(b)(1); ***Commonwealth v. Mitchell***, 986 A.2d 1241, 1244 (Pa.Super. 2009) (flat sentence of ninety days incarceration was illegal).  However, because we vacate judgment of sentence on other grounds, any illegality is irrelevant.

[2] A bicycle qualifies as a vehicle under the Vehicle Code, and the DUI laws therefore apply.  ***See Commonwealth v. Brown***, 620 A.2d 1213
*(Footnote Continued Next Page)*

the suppression order, and remand the case for proceedings consistent with this memorandum.

We adopt the facts as ably set forth by the trial court in its Pa.R.A.P. 1925(a) opinion.

> On November 6, 2014 . . . . Ms. Jennings testified that she was on Route 100 at the intersection of Commerce Boulevard. She had a green light and was proceeding into the intersection when she then heard and felt defendant [,who was riding a bicycle,] collide with her driver's side door. As soon as the defendant hit her car, she stopped her vehicle and checked to see if the defendant was okay. She heard her moan, and then immediately grabbed her phone and called 911. The police were already dispatched to the scene after a 911 call was placed by a Mr. Fred Slack at 9:54 p.m. Ms. Jennings' car sustained damage to the driver's side of the vehicle, including to the driver's side mirror.
>
> Officer Richard Barth of the West Whiteland Police Department was dispatched to the scene for an accident involving a bicyclist and a vehicle. Upon his arrival, Officer Barth found the defendant lying on the road next to her bicycle with serious injuries. She was unable to speak clearly and was in obvious pain and discomfort. While attempting to talk to defendant, he detected a strong odor of alcohol emanating from her breath and person. He also found an unopened bottle of vodka on the ground about a foot away from where she was lying, which he later ascertained was hers. While at the accident scene, Officer Barth formed the opinion that defendant was intoxicated to the point that she was incapable of safely operating a bicycle.
>
> . . . .
>
> Defendant was transported to Paoli Memorial Hospital's trauma unit where she was treated for serious injuries including a

*(Footnote Continued)* ─────────────

(Pa.Super. 1993) ("A bicycle is clearly not a motor vehicle . . . However, it is the operators of vehicles, not the operators of motor vehicles, who are regulated[.]").

hemoneumothorax, collapsed lung, fractured ribs, broken scapula and a head injury, which required 8-9 staples in her scalp. While in the trauma room and receiving treatment, Officer Barth waited either in the room or right outside.

While defendant was obtaining treatment for her injuries, Officer Barth advised her that he suspected that she was operating her bicycle while she was intoxicated, and he was therefore investigating her for Driving Under the Influence (hereinafter "DUI"). He then requested a sample of her blood for testing. Defendant, who was 45 years old at the time, responded that she wanted to speak with her father. The officer told her that she was above the age of 18 and had to make the decision herself, and she replied, "well, I guess." He then asked if she was consenting to the blood draw and he told her she could refuse, but that she would face penalties from the Department of Transportation including the loss of her license and a $1,000.00 fine. She then asked to speak to her father again. Officer Barth explained that she needed to make the decision, not her father, and she replied, "okay, I guess." At that point, the nurse came in and drew the blood, which was then provided to the officer and tested through the regular means of testing. The results showed a blood alcohol content (hereinafter "BAC ") of .173%. . . .

While Officer Barth did inform the defendant of the consequences for refusing to provide a blood sample, he did not read the Implied Consent Form (DL-26) to her or ask her to sign one since she consented to the blood draw. He testified that he only provides the form to a person if they refuse to give consent.

Trial Court Opinion, 11/10/16, at 1-3.

Appellant was charged with a summary traffic offense, and two counts of driving under the influence, one for general impairment and one for driving with a blood alcohol concentration ("BAC") greater than 0.16% within two hours of driving. Appellant filed a motion to suppress the blood results, asserting that the warrantless blood draw did not fall within any valid exception to the warrant requirement.

The trial court denied the motion after an evidentiary hearing. Appellant then submitted, on October 14, 2015, a supplemental motion to suppress, averring that "[t]he original seizure of blood was unlawful," and that a subsequent warrant for hospital records was predicated upon the results of the blood draw taken by Officer Barth. Supplemental Motion to Suppress, 10/14/15, at ¶ 6-7. An evidentiary hearing was not held, nor was the motion ruled upon, presumably because the trial court had already determined that the Commonwealth could introduce the evidence obtained by Officer Barth.

Following a bench trial, Appellant was convicted of all counts. The trial court subsequently imposed the foregoing sentence. Appellant filed a timely notice of appeal and complied with the trial court's order to file a concise statement. The trial court authored an opinion in response and we now examine the two issues posed by Appellant.

> 1. Did the trial court err in denying defendant's Motion to Suppress and in concluding that she knowingly, intelligently and voluntarily consented to the seizure of a sample of her blood, after the officer refused to allow her to consult with another, and told the defendant that there would be an enhanced penalty if she refused to consent to blood testing?
>
> 2. Did the trial court err in denying defendant's Motion For Judgment of Acquittal, and in concluding that the Commonwealth's evidence was sufficient to prove, beyond a reasonable doubt, the charged violation of 75 Pa.C.S. § 3802(c) that defendant drove a vehicle within two hours before a sample of her blood was drawn?

- 4 -

Appellant's brief at 4. We agree that the order denying suppression must be reversed; however, we address the second issue first. "Since a sufficiency claim warrants automatic discharge rather than retrial, we address that issue at the outset." *Commonwealth v. Coleman*, 130 A.3d 38, 41 (Pa.Super. 2015) (reviewing sufficiency claim before addressing suppression claim).

Following the Commonwealth's presentation of evidence, Appellant moved for judgment of acquittal at the § 3802(c) charge, which criminalizes the following:

> **(c) Highest rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c). That motion challenged the sufficiency of the evidence. *See* Pa.R.Crim.P. 606(A)(1) (motion for judgment of acquittal challenges the sufficiency of the evidence). Whether the evidence was sufficient to support the conviction presents a question of law. Our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Walls*, 144 A.3d 926, 931 (Pa.Super. 2016) (citation omitted). In conducting our inquiry, we

> examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a

- 5 -

reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

***Commonwealth v. Doughty***, 126 A.3d 951, 958 (Pa. 2015).[3]

The only element at issue is whether the Commonwealth established that Appellant's BAC was 0.16% or higher within two hours of operation. While our standard of review is *de novo*, the trial court's rationale for denying the motion is well-stated:

> Defendant claims that the Commonwealth failed to establish the third element. The court disagrees. Ms. Jennings testified that as soon as the defendant hit her car, she stopped her vehicle and checked to see if the defendant was okay. She heard her moan, and then immediately grabbed her phone and called 911. The police were already dispatched to the scene, however, after a 911 call was placed by a Mr. Fred Slack at 9:54 p.m. It is clear, based on the totality of the circumstances, that the accident happened within moments of that call. This conclusion is based on the time of day, the location of the accident, and the number of people in the area. It is supported by the fact that Ms. Jennings called almost immediately after the accident but the police were already on their way because of the call from Mr. Slack. Defendant's blood was drawn at 11:50 p.m., which was within two hours of the accident and the test reflected a BAC of 0.173%. Accordingly, the court finds that the Commonwealth established that defendant's BAC was 0.16% or higher within two hours of riding her bicycle as required by the statute.

Order Denying Motion for Judgment of Acquittal, 11/17/15, at 1, n.1.

---

[3] Since Appellant moved for judgment of acquittal at the close of the Commonwealth's case-in-chief, we slightly modify the inquiry by asking whether the evidence could support a finding of guilt beyond a reasonable doubt. The distinction is immaterial for legal purposes.

We fully agree with this analysis, as the Commonwealth may establish its burden of proof as to any element of a crime through wholly circumstantial evidence. In *Commonwealth v. Johnson*, 833 A.2d 260 (Pa.Super. 2003), we noted that "an eyewitness is not required to establish that a defendant was driving, operating, or was in actual physical control of a motor vehicle. The Commonwealth can establish [that] through wholly circumstantial evidence[.]" *Id*. at 263. The evidence established that Appellant, riding a bicycle, struck a vehicle driven by Brandy Jennings. Ms. Jennings testified that she immediately stopped her vehicle and called 911. N.T., 10/19/15, at 111. Police arrived within minutes of the accident. *Id*. at 96. Corporal Gary Moore, the first police officer on scene, stated that he was dispatched by 911 at 9:55 p.m. Tara Capoferri testified that the blood was drawn at 11:50 p.m.[4] *Id*. at 74.

Viewing this evidence in a light most favorable to the Commonwealth establishes that Appellant was operating the bicycle at approximately 9:54 p.m. Hence, the blood draw at 11:50 p.m. was within two hours. In other words, the blood draw was timely unless Appellant was last operating the

---

[4] Appellant maintains that the time of the blood draw was 11:55 p.m., as Officer Barth listed that time in his testimony. Appellant's brief at 22-23. However, the nurse who conducted the blood draw testified that the blood was drawn at 11:50 p.m. It is for the fact-finder to resolve these types of factual discrepancies, and for sufficiency purposes we must view the facts in the light most favorable to the Commonwealth, not Appellant.

bicycle prior to 9:50 p.m.  We find that the Commonwealth's circumstantial evidence established that was not the case.  Therefore, the trial court properly denied the motion.

Furthermore, even if the circumstantial evidence alone did not suffice, the Commonwealth clearly established, pursuant to 75 Pa.C.S. § 3802(g), that the blood was drawn within two hours of operation for purposes of the underlying DUI crime.  That subsection states:

> **(g)  Exception  to  two-hour  rule.--**Notwithstanding  the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled  substance  concentration  in  an  individual's  blood  or breath is an element of the offense, evidence of such alcohol or controlled  substance  concentration  more  than  two  hours  after the  individual  has  driven,  operated  or  been  in  actual  physical control  of  the  movement  of  the  vehicle  is  sufficient  to  establish that element of the offense under the following circumstances:
>
> > (1)  where  the  Commonwealth  shows  good  cause explaining why the chemical test sample could not be obtained within two hours; and
> >
> > (2)  where  the  Commonwealth  establishes  that  the individual  did  not  imbibe  any  alcohol  or  utilize  a controlled substance between the time the individual was obtained and the time the sample was obtained.

75 Pa.C.S. § 3802(g).

The Commonwealth, recognizing that the two-hour window was close, established each of these two requirements, a fact that Appellant does not dispute.  Instead, Appellant maintains that the Commonwealth cannot rely on that subsection, since "Section 3802(g) creates an 'aggravated' offense that is different and separate from the offenses set forth in . . . Section

3802(c)." Appellant's brief at 24. Appellant avers that the (g)(1), (2) provisions constitute "additional elements" that, when proven, result in increased penalties in violation of **United States v. Alleyne**, 133 S.Ct. 2151 (2013) (holding that any fact that, by law, increases the penalty for a crime is an element that must be submitted to the jury and found beyond a reasonable doubt). Appellant's brief at 24-25.

We disagree. First, Appellant's legal argument is misdirected; her argument that § 3802(g) violates **Alleyne** has nothing to do with the sufficiency of the evidence to satisfy the two-hour timing element but rather an assertion that § 3802(g) is unconstitutional for reasons divorced from the sufficiency context.

More importantly, § 3802(g) does not increase the otherwise applicable penalty for the pertinent DUI crimes, nor does it involve proof of any additional facts. A violation of the underlying DUI offense, in this case § 3802(c), remains the pertinent crime that the Commonwealth must establish beyond a reasonable doubt. Section 3802(g) simply provides an exception to the normal two-hour requirement where the two delineated conditions are met. Contrary to Appellant's argument, the two conditions do not constitute additional elements, but instead reflect a legislative recognition that the Commonwealth cannot meet the two-hour time requirement in all DUI cases. In this sense, § 3802(g) is no different than the constructive possession doctrine, which serves to satisfy the element of possession. **See**

***Commonwealth v. Mudrick***, 507 A.2d 1212, 1213 (Pa. 1986) ("Clearly the Commonwealth could not show actual possession of the contraband. Its case was based on constructive possession. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement."). Likewise, § 3802(g) is a legal fiction, explicitly codified by the legislature, to deal with the practical realities of enforcing DUI laws. It applies only when the Commonwealth has good cause for not testing a defendant's blood alcohol level within two hours. There is no doubt that the scenario herein, where the suspected DUI defendant received medical attention for injuries sustained in a crash, qualified as good cause. Therefore, even if we accepted that the blood draw occurred a few minutes outside the two-hour window, the Commonwealth satisfied the statutory exception.

Having concluded that sufficient evidence supported the verdict, we now address the suppression issue. During the pendency of this appeal, the United States Supreme Court issued ***North Dakota v. Birchfield***, 136 S.Ct. 2160 (2016), which concluded that a warrantless blood draw was not justified as a search incident to arrest. Next, with respect to whether the consent exception for searches applied based on implied consent, *i.e.* the theory that operating a motor vehicle constitutes consent by conduct, the Court concluded that the warrantless taking of a blood sample could not be justified based on such laws.

Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them. It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

*Id*. at 2185 (citations omitted).

In **Commonwealth v. Evans**, 153 A.3d 323 (Pa.Super. 2016), we applied **Birchfield**, vacated the judgment of sentence, and remanded for an evidentiary hearing regarding whether, in light of **Birchfield**, the defendant's consent could be deemed voluntary. Therein, David Evans agreed to provide blood after being read the implied consent warnings. **See** 75 Pa.C.S. § 1547(a). Like Appellant herein, Evans maintained that his consent was coerced by the threat of criminal penalties and was therefore involuntary. Applying **Birchfield**, we determined that further proceedings were required:

[E]ven though Pennsylvania's implied consent law does not make the refusal to submit to a blood test a crime in and of itself, the law undoubtedly "impose[s] criminal penalties on the refusal to submit to such a test." **Birchfield**, 136 S.Ct. at 2185–2186. To be sure, Section 3804(c) provides that an "individual who violates section 3802(a)(1)[, DUI, general impairment] and refused testing of blood" is punished more severely than an individual who commits the stand-alone DUI, general impairment offense under Section 3802(a)(1)—and to the same extent as an individual who violates Section 3802(c), relating to DUI, highest rate of alcohol. 75 Pa.C.S.A. § 3804(c). As such, **Birchfield** controls the case at bar.

- 11 -

> In this case, Appellant consented to the warrantless blood draw . . . . [only] after being informed, by the police, that refusal to submit to the test could result in enhanced criminal penalties. Since **Birchfield** held that a state may not "impose criminal penalties on the refusal to submit to [a warrantless blood] test," the police officer's advisory to Appellant was partially inaccurate. Therefore, we must vacate Appellant's judgment of sentence, vacate the suppression court's order, and remand the case to the trial court to "reevaluate [Appellant's] consent ... [, based on] the totality of all the circumstances ... [and] given the partial inaccuracy of the officer's advisory." **Birchfield**, 136 S.Ct. at 2186.

**Evans**, **supra** at 331 (all alterations except first in original).

The Commonwealth concedes that the suppression order must be vacated, as Appellant preserved the issue at all stages and is therefore entitled to application of the **Birchfield** holding. The Commonwealth does not ask for a remand to address the voluntariness of the consent or suggest that the order may be affirmed on some other ground, such as exigent circumstances. Instead, the Commonwealth states that the issue of whether it may introduce the evidence obtained as a result of the search warrant, which was the subject of the supplemental suppression motion, is for litigation upon retrial. We agree that **Evans** applies, and therefore reverse judgment of sentence and remand for a new trial at which the suppressed evidence must be excluded.

J-A14021-17

Judgment of sentence vacated. Suppression order vacated. Jurisdiction relinquished.[5]

_____

[5] We note that, following oral argument in this case, our Supreme Court decided ***Commonwealth v. Myers***, --- A.3d ---, 2017 WL 3045867 (Pa. July 19, 2017). A majority of our High Court agreed that an unconscious driver retained the statutory right to refuse a blood draw, since that right applies to all DUI arrestees. ***See*** 75 Pa.C.S. § 1547(a) (motorist is deemed to have consented to chemical testing of breath or blood if police officer has reasonable basis to suspect motorist is impaired by influence of alcohol or a controlled substance); § 1547(b) (consequences for refusal).

Justice Wecht, joined by Justices Donohue and Dougherty, expressed the view that the warrantless blood draw was not otherwise saved under the implied consent theory. Justice Wecht opined that the driver must be given the chance to refuse, not only as a statutory right, but as a constitutional command. "This conclusion not only is commanded by the statute; it is a constitutional necessity." ***Id***. at *11 (footnote omitted). Justice Todd filed a concurring opinion, stating that the statutory violation was enough to resolve the case, and declined to address the constitutional dimensions.

Chief Justice Saylor, joined by Justice Baer, authored a concurring opinion disagreeing with the foregoing discussion respecting whether implied consent serves as consent. "[I]t seems to me that the voluntary act of operating a vehicle suffices to establish the initial consent to chemical testing." ***Id***. at *15 (Saylor, C.J., concurring). Justice Mundy also expressed that view in dissent. "The text reveals the General Assembly's intent to generally deem all drivers on Pennsylvania's roads as having consented to blood or breath tests . . . . one who has been deemed to have given consent and does not affirmatively revoke consent has still given it." ***Id***. at *17-18 (Mundy, J., dissenting).

As is evident from ***Myers***, the issue of implied consent remains unsettled post-***Birchfield***. ***See e.g. State v. Brar***, --- N.W.2d ---, 2017 WL 2876142 at *4 (Wi. 2017) ("The use of the word 'implied' in the idiom 'implied consent' is merely descriptive of the way in which an individual gives consent. It is no less sufficient consent than consent given by other means."). This case deals with a patient who was apparently conscious at all times, and may or may not have had blood drawn for independent

*(Footnote Continued Next Page)*

- 13 -

Judge Shogan joins the memorandum.

P.J.E. Bender concurs in the result.

*Judgment Entered.*

![signature]

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>9/27/2017</u>

---

medical reasons in addition to investigative reasons. Our disposition is limited to an agreement that **Birchfield** rendered involuntary Appellant's consent to the requested blood draw.