J-A16019-16

2016 PA Super 293

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID EUGENE EVANS | |
| Appellant | No. 1196 WDA 2015 |

Appeal from the Judgment of Sentence July 14, 2015
In the Court of Common Pleas of Greene County
Criminal Division at No(s): CP-30-CR-0000387-2013

BEFORE:  SHOGAN, OLSON and STRASSBURGER,* JJ.

OPINION BY OLSON, J.:                          **FILED DECEMBER 20, 2016**

Appellant, David Eugene Evans, appeals from the judgment of sentence entered on July 14, 2015.  We vacate Appellant's judgment of sentence, vacate the suppression order, and remand the case for proceedings consistent with this opinion.

Appellant was arrested on May 19, 2012 and the Commonwealth later charged him with a variety of crimes, including driving under the influence of alcohol ("DUI"), highest rate of alcohol, third offense, and DUI general impairment, third offense.[1]

On January 9, 2014, Appellant filed a motion to suppress the blood that was taken from him at the hospital and the results of the blood alcohol

_____

[1] 75 Pa.C.S.A. § 3802(c) and (a)(1), respectively.


*Retired Senior Judge assigned to the Superior Court.

test. Within Appellant's suppression motion, Appellant claimed that, after his arrest, the police transported him to the hospital and requested that he submit to a blood alcohol test. According to Appellant, he "believed" that the police provided him with the "implied consent" warnings required by 75 Pa.C.S.A. § 1547[2] and, in doing so, "informed [Appellant] that if he refused to give blood, he subjected himself to enhanced criminal penalties[] and a suspension of his driver's license."[3] Appellant's Motion to Suppress, 1/9/14, at 1. Appellant declared that, "[a]fter being informed of [the warnings, Appellant] gave hospital personnel a sample of his blood and subsequent

_____

[2] 75 Pa.C.S.A. § 1547(b)(2) sets forth the implied consent warnings. The subsection declares:

> It shall be the duty of the police officer to inform the person that:
>
> > (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and
> >
> > (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1) [(concerning DUI, general impairment)], the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S.A. § 1547(b)(2).

[3] During the suppression hearing, Lieutenant John Beckus of the Cumberland Township Police Department testified that the police, in fact, provided Appellant with the implied consent warnings set forth in 75 Pa.C.S.A. § 1547(b)(2). *See* N.T. Suppression Hearing, 5/20/14, at 22-23.

testing revealed a blood alcohol content above the legal limit." *Id.* The police did not obtain a warrant prior to taking Appellant's blood. *Id.* at 3.

Within the suppression motion, Appellant claimed that the police coerced his consent by "inform[ing him] that if he [did] not submit to extraction and subsequent testing of his blood, he [would] face[] stiffer criminal penalties." *Id.* Therefore, Appellant claimed, his consent was involuntary and, since the police did not have a warrant, the taking of his blood constituted an unreasonable search in violation of both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Id.* Appellant claimed that the results of the blood test must be suppressed as the product of the unreasonable search. *Id.*

On May 20, 2014, the trial court held a hearing on Appellant's suppression motion and, during the hearing, the Commonwealth presented the testimony of Lieutenant John Beckus, of the Cumberland Township Police Department.[4] As Lieutenant Beckus testified, he was present on the night of May 19, 2012 when his fellow-officer, Officer Green,[5] arrested Appellant for DUI. N.T. Suppression Hearing, 5/20/14, at 19. Lieutenant Beckus testified

---

[4] At the time of Appellant's arrest, Lieutenant Beckus was a patrolman in the Cumberland Township Police Department. N.T. Suppression, 5/20/14, at 13.

[5] The certified record does not contain Officer Green's first name.

that, after Officer Green arrested Appellant, Officer Green placed Appellant in the back of the patrol car and "advised [Appellant] that he was going to take him to submit to a chemical test of blood." *Id.* at 21 and 28. Lieutenant Beckus testified that Appellant "[j]ust kind of shook his head and said okay." *Id.* at 21.

As Lieutenant Beckus testified, when they arrived at the hospital, the officers took Appellant to the laboratory and Officer Green advised Appellant of both the implied consent warnings set forth in 75 Pa.C.S.A. § 1547(b)(2) and the *O'Connell* warnings.[6] Specifically, Lieutenant Beckus testified that Officer Green told Appellant:

_____

[6] We have explained:

> The *O'Connell* warnings were first announced in *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (1989). In a later opinion, our Supreme Court explained both the *O'Connell* warnings and the reasoning behind the warnings:
>
> > in order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving privileges[. T]he duty of the officer to provide the *O'Connell* warnings as described herein is triggered by the officer's request that the motorist submit to chemical sobriety testing,

*(Footnote Continued Next Page)*

- 4 -

Please be advised that you are under arrest for driving under the influence of alcohol or controlled substance, in violation of § 3802 of the vehicle code.

[Number two]: I request that you submit to a chemical test of . . . the blood. . . .

[Number three]: It is my duty as a police officer to inform you that if you refuse to submit to a chemical test, your operating privilege will be suspended for at least 12 months and up to 18 months. If you have prior refusals or have been previously sentenced to driving under the influence, in addition, if you refuse to submit to chemical test and you are convicted or plead to violating § 3802(a)(1)[,] related to impaired driving under the vehicle code, because of your refusal, you will be subject to more severe penalties set forth in § 3804(c)[,] relating to penalties, the same as if you were – if you would be convicted at the highest rate of alcohol, which can include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000, to a maximum of [five] years in jail and a maximum fine of $10,000.

It is also my duty as a police officer to inform you that you have no right to speak with an attorney or anyone else before deciding whether to submit to testing, and any request to speak with an attorney or anyone else after being provided these warnings, remaining silent when asked to submit to chemical testing will constitute a refusal resulting in a suspension of your operating privilege and other enhanced criminal sanctions if you are convicted of violating § 3802(a) of the vehicle code.

*(Footnote Continued)* ─────────────

whether or not the motorist has first been advised of his ***Miranda*** rights.

***Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Scott***, 684 A.2d 539, 545 (Pa. 1996).

***Commonwealth v. Barr***, 79 A.3d 668, 670 n.4 (Pa. Super. 2013).

N.T. Suppression Hearing, 5/20/14, at 22-23, 24, and 26 (internal quotations and some internal capitalization omitted).

Lieutenant Beckus testified that, after Appellant was informed of the above, Appellant agreed to submit to the requested blood draw. *Id.* at 24. The phlebotomist then drew Appellant's blood and, following testing, it was revealed that Appellant's blood alcohol content was 0.18%. *Id.* at 25.

Appellant also testified during the suppression hearing. According to Appellant, although he could not recall much of what occurred on the night of May 19, 2012, he testified that, following his arrest, he "asked [the police officer] if [he] was going to jail and [the police officer] was like no, not if you go take this [blood] test." *Id.* at 63.

The trial court denied Appellant's motion to suppress on August 4, 2014, reasoning that Appellant "consented to [the] blood draw after being read his [implied consent w]arnings by the arresting officer."[7] Trial Court Order, 8/4/14, at 1; Trial Court Opinion, 10/2/15, at 3. Following a stipulated bench trial, the trial court found Appellant guilty of DUI, highest rate of alcohol, third offense and DUI, general impairment, third offense.[8, 9]

_____

[7] The trial court also concluded that the warrantless blood draw was not justified by exigent circumstances. Trial Court Order, 7/31/14, at 1.

[8] During the stipulated bench trial, Appellant and the Commonwealth stipulated to the fact that Appellant "imbibed a sufficient amount of alcohol such that the alcohol concentration in his blood was .180 percent . . . within two hours after [Appellant] had driven." N.T. Trial, 12/15/14, at 15.

On June 23, 2015, the trial court sentenced Appellant to serve a term of 12 to 60 months in jail for his DUI, highest rate of alcohol, third offense conviction and, on July 14, 2015, the trial court amended the sentencing order to reflect the fine for Appellant's summary conviction. Appellant filed a timely notice of appeal and Appellant now raises the following claim to this Court:[10]

> Whether the trial court erred in failing to suppress evidence of Appellant's blood alcohol content where his blood was taken without a warrant and in the absence of knowing and voluntary consent by Appellant?

*(Footnote Continued)* ————————————

[9] The trial court also found Appellant guilty of the summary offense of disregarding a traffic lane. 75 Pa.C.S.A. § 3309(1).

[10] The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied and, within his Rule 1925(b) statement, Appellant raised the following claim:

> [The trial court] erred in not granting [Appellant's] motion to suppress the results of testing on blood taken from him after his arrest for [DUI], where given the warnings the police gave [Appellant] prior to his decision to give a sample of his blood and all the factors present at the time that [Appellant] rendered his decision to give blood, his decision was not voluntarily made. [**Missouri v. McNeely**, ___ U.S. ___, 133 S.Ct. 1552 (2013)] makes it clear that the entry into the veins of a suspect in custody following an arrest for [DUI] is a search protected by the Fourth Amendment for which a warrant is required or a recognized exception to the requirement that a search warrant be obtained. Voluntary consent is a recognized exception. Implied consent is not.

Appellant's Rule 1925(b) Statement, 8/20/15, at 1.

Appellant's Brief at 4.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); **see also** Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing [such a ruling by the] suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (internal citations omitted). "Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." **Commonwealth v. Stilo**, 138 A.3d 33, 35-36 (Pa. Super. 2016); **see also In re L.J.**, 79 A.3d 1073, 1083-1087 (Pa. 2013).

Appellant claims that the trial court erred when it denied his motion to suppress the results of his blood alcohol test. According to Appellant, his

consent to submit to the blood test was involuntary, as it was coerced by Pennsylvania's enhanced criminal penalties upon DUI suspects who refuse a requested blood test and are then convicted of DUI, general impairment. Appellant's Brief at 9 and 20. Appellant claims that, since his consent was involuntary and since the police did not obtain a warrant to draw his blood, the search was unreasonable under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.[11] *Id.* at 34.

"The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Strickler*,

_____

[11] Citing to our opinion in *Commonwealth v. Spease*, 911 A.2d 952 (Pa. Super. 2006), the Commonwealth claims that Appellant lacks standing to challenge "the threat of enhanced penalty." Commonwealth's Brief at 19. The Commonwealth is incorrect, given that *Spease* was concerned with a defendant who consented to a blood test and then claimed that her "5th Amendment right to remain silent [was] violated because [she was required to] verbalize [] her assent to a chemical test" – whereas, in the case at bar, Appellant claims that the warrantless search of his person violated his Fourth Amendment right to be free from unreasonable searches and seizures. Moreover, Appellant undoubtedly has standing to claim that his consent to have blood drawn from his own body for purposes of chemical testing for alcohol was involuntary, where it was coerced by the threat of criminal penalty.

757 A.2d 884, 888 (Pa. 2000). "Exceptions to the warrant requirement include the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception . . . , the stop and frisk exception, and the search incident to arrest exception." *Commonwealth v. Dunnavant*, 63 A.3d 1252, 1257 n.3 (Pa. Super. 2013).

The "administration of a blood test . . . performed by an agent of, or at the direction of the government" constitutes a search under both the United States and Pennsylvania Constitutions. *Commonwealth v. Kohl*, 615 A.2d 308, 315 (Pa. 1992); *Schmerber v. California*, 384 U.S. 757, 770 (1966). Since the blood test in the case at bar was performed without a warrant, the search is presumptively unreasonable "and therefore constitutionally impermissible, unless an established exception applies." *Strickler*, 757 A.2d at 888.

The trial court held that the warrantless blood draw was justified solely because Appellant consented to the search.[12, 13] *See* Trial Court Opinion,

---

[12] The trial court explicitly held that the exigent circumstances exception was inapplicable to this case. Trial Court Order, 7/31/14, at 1. On appeal, the Commonwealth has not claimed that the search was justified under the exigent circumstances exception. Commonwealth's Brief at 1-21; *see also Missouri v. McNeely*, ___ U.S. ___, 133 S.Ct. 1552, 1556 and 1568 (2013) (holding that the natural metabolization of alcohol in the bloodstream does not present a *per se* exigency and that, "consistent with Fourth Amendment principles, [] exigency in [drunk-driving cases] must be determined case by case based on the totality of the circumstances").

10/2/15, at 1-4.  Therefore, the reasonableness of the search in the case at bar hinges upon whether Appellant's consent was voluntary.

The Pennsylvania Supreme Court has held:

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances.  The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent.  Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant.  Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

**Commonwealth v. Smith**, 77 A.3d 562, 573 (Pa. 2013) (internal citations, quotations, and corrections omitted).

On June 23, 2016, the United States Supreme Court decided **Birchfield v. North Dakota**, ___ U.S. ___, 136 S.Ct. 2160 (2016).  As is pertinent to the case at bar, in that case, the police arrested Steve Michael

*(Footnote Continued)* _____

[13] We note that the warrantless blood draw was not justified as a search incident to arrest.  **Birchfield v. North Dakota**, ___ U.S. ___, 136 S.Ct. 2160, 2185 (2016) ("we conclude that a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving").

Beylund (hereinafter "Beylund") for DUI,[14] while Beylund was driving in North Dakota. At the time of his arrest, North Dakota's "implied consent" law read, in relevant part, as follows:

> 1. Any individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, or urine for the purpose of determining the alcohol concentration or presence of other drugs, or combination thereof, in the individual's blood, breath, or urine. . . .
>
> 2. The test or tests must be administered at the direction of a law enforcement officer only after placing the individual . . . under arrest and informing that individual that the individual is or will be charged with the offense of [DUI]. . . .
>
> 3. a. The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs; that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence; and that refusal of the individual to submit to the test directed by the law enforcement officer may result in a revocation for a minimum of one hundred eighty days and up to three years of the individual's driving privileges. . . .

NDCC § 39-20-01.

---

[14] The Supreme Court in **Birchfield** consolidated three separate cases, one of which was petitioner Beylund's case.

Therefore, under North Dakota law, the refusal to take a requested blood test constituted a crime in and of itself. *See id.* ("refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence"). The sentences for a refusal "range[d] from a mandatory fine of $500 (for first-time offenders) to fines of at least $2,000 and imprisonment of at least one year and one day (for serial offenders)." *Birchfield*, 136 S.Ct. at 2170.

After Beylund's arrest, the officer informed him of North Dakota's implied consent advisory and that "test refusal in these circumstances is itself a crime." *Id.* at 2172. Beylund then agreed to the requested blood draw and testing "revealed a blood alcohol concentration of 0.250%, more than three times the legal limit." *Id.*

Before the state courts, Beylund argued that "his consent to the blood test was coerced by the officer's warning that refusing to consent would itself be a crime." *Id.* The state courts rejected Beylund's argument, with the North Dakota Supreme Court reasoning that Beylund's consent was not coerced because "the State could permissibly compel both blood and breath tests." *Id.* at 2186. The United States Supreme Court granted Beylund's petition for writ of *certiorari*.

The Supreme Court explained:

> [Prior Supreme Court] opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply [with a request for a blood alcohol test sample]. Petitioners do not question the

constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads. . . . [W]e conclude that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense.

*Id.* at 2185-2186.

The United States Supreme Court then held that the North Dakota Supreme Court erred in concluding that Beylund's consent was voluntary, as the state court's conclusion rested "on the erroneous assumption that the State could permissibly compel [] blood . . . tests" by "impos[ing] criminal penalties on the refusal to submit to such a test." *Id.* at 2185 and 2186. The Supreme Court vacated Beylund's judgment of sentence and remanded the case to the state courts, so that the courts could "reevaluate Beylund's consent . . . [, based on] the totality of all the circumstances . . . [and] given the partial inaccuracy of the officer's advisory." *Id.* For the reasons that follow, we conclude that *Birchfield* requires a similar result here.

As noted, Pennsylvania has an implied consent statute, which provides:

(a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been

- 14 -

driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section . . . 3802 (relating to driving under influence of alcohol or controlled substance) . . .

. . .

(b) Suspension for refusal.--

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person [for a period of either 12 or 18 months]. . . .

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1) [(concerning DUI, general impairment)], the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S.A. § 1547.

Pennsylvania law also prescribes a three-tiered DUI statutory scheme, which penalizes and punishes drivers with higher blood alcohol levels more severely than drivers with relatively lower blood alcohol levels. Specifically, 75 Pa.C.S.A. § 3802 sets forth the three tiers of illegal impairment in the following manner: Section 3802(a), subtitled "[g]eneral impairment," prohibits an individual from driving a vehicle "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely

driving . . . the vehicle" and from driving a vehicle with a blood or breath alcohol concentration (hereinafter "BAC") of at least 0.08% but less than 0.10%; Section 3802(b), subtitled "[h]igh rate of alcohol," prohibits an individual from driving a vehicle with a BAC of at least 0.10% but less than 0.16%; and, Section 3802(c), subtitled "[h]ighest rate of alcohol," prohibits an individual from driving a vehicle with a BAC that is 0.16% or higher.  75 Pa.C.S.A. § 3802.

75 Pa.C.S.A. § 3804 sets forth the penalties for individuals who violate Section 3802(a), (b), and (c) – the penalties are lowest for individuals who violate Section 3802(a) and are the greatest for individuals who violate Section 3802(c).  However, Section 3804 also sets forth the punishment for individuals who refuse a blood or breath test and who are then convicted of DUI, general impairment:  the section punishes individuals who refuse the test (and are convicted of Section 3801(a)(1), DUI, general impairment) at the same level as those who are convicted of Section 3802(c), which is DUI, highest rate of alcohol.

Finally, with respect to an individual who refuses a blood or breath test and who is then convicted of Section 3802(a)(1) (DUI, general impairment), 75 Pa.C.S.A. § 3803 also grades the conviction at the same level as an individual who violates Section 3802(c), which is DUI, highest rate of alcohol.  For individuals such as Appellant, who have "one or more prior offenses," 75 Pa.C.S.A. § 3803(b)(4) grades a conviction for DUI, highest rate of alcohol and DUI, general impairment (when coupled with a refusal to

submit to a blood or breath test) as a misdemeanor of the first degree.  75 Pa.C.S.A. § 3803(b)(4).   This is a higher grade of offense than "[a]n individual who violates section 3802(a)[, DUI, general impairment] and has more than one prior offense" – which Section 3803(a)(2) grades as a second-degree misdemeanor.  75 Pa.C.S.A. § 3803(a)(2).

Thus, even though Pennsylvania's implied consent law does not make the refusal to submit to a blood test a crime in and of itself, the law undoubtedly "impose[s] criminal penalties on the refusal to submit to such a test."  *Birchfield*, 136 S.Ct. at 2185-2186.  To be sure, Section 3804(c) provides that an "individual who violates section 3802(a)(1)[, DUI, general impairment] and refused testing of blood" is punished more severely than an individual who commits the stand-alone DUI, general impairment offense under Section 3802(a)(1) – and to the same extent as an individual who violates Section 3802(c), relating to DUI, highest rate of alcohol.  75 Pa.C.S.A. § 3804(c).  As such, *Birchfield* controls the case at bar.

In this case, Appellant consented to the warrantless blood draw after the police informed him:  "if you refuse to submit to chemical test and you are convicted or plead to violating § 3802(a)(1)[,] related to impaired driving under the vehicle code, because of your refusal, you will be subject to more severe penalties set forth in § 3804(c)[,] relating to penalties, the same as if you were – if you would be convicted at the highest rate of alcohol."  N.T. Suppression Hearing, 5/20/14, at 23.  As such, Appellant only consented to the warrantless blood draw after being informed, by the police,

- 17 -

that refusal to submit to the test could result in enhanced criminal penalties. Since **Birchfield** held that a state may not "impose criminal penalties on the refusal to submit to [a warrantless blood] test," the police officer's advisory to Appellant was partially inaccurate. Therefore, we must vacate Appellant's judgment of sentence, vacate the suppression court's order, and remand the case to the trial court to "reevaluate [Appellant's] consent . . . [, based on] the totality of all the circumstances . . . [and] given the partial inaccuracy of the officer's advisory." **Birchfield**, 136 S.Ct. at 2186.

Judgment of sentence vacated. Suppression order vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/20/2016</u>