J-S52029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRYAN PAUL GARLITZ | |
| Appellant | No. 8 MDA 2017 |

Appeal from the Judgment of Sentence August 2, 2016
In the Court of Common Pleas of Fulton County
Criminal Division at No(s): CP-29-CR-0000202-2015

BEFORE:  GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 19, 2017**

Bryant Paul Garlitz appeals from the judgment of sentence, entered in the Court of common Pleas of Fulton County, following his conviction for Driving Under the Influence (DUI)[1] and various summary traffic offenses. After careful review, we reverse Garlitz's judgment of sentence and remand this case to the trial court to determine whether Garlitz's consent to the blood test was validly obtained in light of ***Birchfield v. North Dakota***, 136 S.Ct. 2160 (2016), which was decided just six days before the trial court's decision in this case.

On July 4, 2015, at approximately 10:10 p.m., State Police Trooper Cody Hollibaugh was dispatched to Layton Road in Warfordsburg, Fulton

_____

[1] 75 Pa.C.S.A. §§ 3802(c), 3802(a)(1), 7726(a)(2) and (3), 3714, 3736 and 7721(a) respectively.

County. At the time, Trooper Hollibaugh was operating a marked patrol vehicle and was in full uniform. Trooper Hollibaugh arrived at the scene at approximately 10:30 p.m.; both fire and emergency medical services (EMS) personnel were already present. When Trooper Hollibaugh arrived, Garlitz was lying in a private driveway while receiving treatment from EMS personnel. Another individual, Joseph Hendrickson was lying on the ground a short distance from Garlitz down Layton Road; Hendrickson's leg was injured and he had blood on his face. Trooper Hollibaugh proceeded to interview Hendrickson, who displayed slurred speech, bloodshot glassy eyes, slurred speech and confusion. Hollibaugh then interviewed Garlitz, who admitted he and Hendrickson had been driving all-terrain vehicles (ATV) on or near Layton Road when they both crashed. Hollibaugh observed Garlitz's face was bloody, his clothes torn, his eyes bloodshot and glassy and his speech slurred; Garlitz also admitted that he had been drinking. Trooper Hollibaugh requested Garlitz submit to a blood draw and read him a DL-26 form. Garlitz's blood alcohol content, as indicated by the blood draw, was .180 percent. No warrant was obtained for Garlitz's blood test, and Garlitz signed the DL-26 form prior to his blood draw.

Garlitz and Hendrickson were transported to a nearby hospital, after which Trooper Hollibaugh began his investigation of the crash scene. Trooper Hollibaugh observed a green Sportsman ATV resting in a drainage ditch adjacent to the driveway and a red Honda Rubicon ATV next to and touching the green Sportsman ATV. Hollibaugh determined that Garlitz had been

operating the green Sportsman ATV, the tire tracks of which lead back to Layton Road. Hollibaugh further concluded that the green Sportsman ATV had been driven off Layton Road into a field after which it impacted the driveway, throwing Garlitz from the vehicle onto the driveway. Hollibaugh also observed heavy front end damage to the green Sportsman ATV and blood covering the driveway. Hollibaugh did not observe any ATV trails or tread marks in the grass of a nearby field, and ultimately conclude that the ATVs were operated on Layton Road before impacting the driveway.

Following Trooper Hollibaugh's investigation, Garlitz was charged with DUI and various summary traffic offenses. On June 29, 2016, Garlitz filed an omnibus pre-trial motion raising the issue of whether his consent to the blood draw was voluntary. The trial court denied Garlitz's motion on July 7, 2016. After a jury trial held on July 8, 2016, Garlitz was found guilty of DUI as well as summary traffic offenses. On August 2, 2016, Garlitz was sentenced to a period of sixty months' county intermediate punishment, with the first ninety days to be served in the Franklin County Jail. Garlitz filed a post-sentence motion challenging the weight of the evidence on August, 15, 2016, which the trial court denied by court order dated November 29, 2016. Garlitz timely appealed and on January 18, 2017, Garlitz filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Garlitz raises the following issues:

> 1. Due to this Court's holding in **Commonwealth v. Evans**, 153 A.3d 323, 331 (Pa. Super. 2016), did the trial court err in not applying **Birchfield**?

2. Understanding that motorist cannot be deemed to have consented on pain of enhanced criminal penalties, was Garlitz's consent voluntary?

3. Was the verdict for DUI against the weight of the evidence?

Brief of Appellant, at 4-5.

Garlitz's first and second claims are related. Garlitz avers the trial court, in failing to apply **Birchfield**, incorrectly concluded that Garlitz voluntarily consented to a warrantless blood draw, and thus, erred in not suppressing Garlitz's blood alcohol test results.[2]

The United States Supreme Court has established that the taking of a blood sample is a search within the meaning of the Fourth Amendment of the United States Constitution, and thus, absent an applicable exception, police officers may not compel the taking of a blood sample of a defendant without a search warrant. **See Birchfield**, 136 S.Ct. at 2185. Additionally, the **Birchfield** Court concluded that implied-consent laws that impose criminal penalties for refusing to consent to a blood test are unconstitutional, as "motorist cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." **Id.** At 2185-86.

Section 1547 of the Pennsylvania Vehicle Code (i.e., the implied consent law) provides that a person's license may be suspended if he refuses a

---

[2] The trial court acknowledges its error in failing to suppress Garlitz's blood alcohol test results pursuant to **Birchfield**, and respectfully request that we remand this matter for further proceedings. Trial Court Opinion, 11/29/16, at 1.

requested blood test. 75 Pa.C.S.A. § 1547(b). Section 1547 further provides that police shall inform an individual that:

> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and
>
> (ii) if the person refuses to submit to chemical testing upon conviction for plea for violating section 3802(a)(1), the person will be subject to penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S.A. § 1547(a)(2). Section 3804(a) of the Vehicle Code provides increased criminal penalties if a person refuses a blood test and is later convicted of violating section 3802(a)(1). **See** 75 Pa.C.S.A. § 3804(c) (providing sentencing ranges for "[a]n individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates 3802(c) or (d)," including that, for a first offense, the individual shall be sentence to, among other things, "imprisonment of not less than 72 consecutive hours"). Accordingly, in Pennsylvania, although a driver cannot be convicted of a separate offense for refusing to consent to a blood test, the driver faces increased penalties if later convicted of certain DUI offenses. **See Evans**, 153 A.3d at 331.

Following **Birchfield**, police may validly obtain consent based on a warning of a license-suspension penalty, because the Supreme Court made clear that such penalty may be constitutionally imposed. Conversely, where consent is obtained following a warning that refusal will subject a motorist to "the pain of committing a criminal offense," **Birchfield**, 136 S.Ct. at 2186, a

penalty that in fact may not be imposed, that consent may be rendered involuntary. *See Commonwealth v. Ennels*, 167 A.3d 716 (Pa. Super. 2017) (evidence supported finding that defendant's consent to warrantless blood draw was not voluntary, where the implied consent form read and signed by defendant informed him that he would face enhanced criminal penalties if he refused to submit to the test; implied consent to a blood test could not lawfully be based on the threat of enhanced penalties).

With regard to determining the validity of a defendant's consent, our Supreme Court has stated as follows:

> [T]he Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

*Commonwealth v. Smith*, 77 A.3d 562, 573 (Pa. Super. 2013) (internal citations and quotation marks omitted).

Here, it is undisputed that the no warrant was obtained for Garlitz's blood. Further, it was stipulated that Trooper Hollibaugh read the DL-26 form to Garlitz, which provides, in relevant part, as follows:

> If you refuse to submit to the chemical test, your operating privilege will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted

of violating Section 3802(a)(1) (relating to impaired driving) the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. **These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail** and a minimum fine of $1000.00, up to a maximum of five years in jail and a maximum fine of $10,000.

Commonwealth Exhibit 1, 7/7/2016 (emphasis in the original). Garlitz signed the DL-26 form in acknowledgement prior to his blood draw. Therefore, we are constrained to conclude that Garlitz's consent was based, in part, on the information provided in the DL-26 form. Specifically, Garlitz's consent was premised on the threat of enhanced criminal penalty upon conviction for DUI if he were to refuse to submit to the blood draw as requested.

Next, Garlitz asks us to reassess the credibility of Trooper Hollibaugh by examining what he characterizes as inconsistencies between his crash report and testimony at trial. Specifically, Garlitz avers Trooper Hollibaugh's crash report "failed to accurately depict the direction of the street in which the accident occurred and in the direction Garlitz attempted to negotiate prior to the accident." Brief of Appellant, at 5. Garlitz's claim is meritless.

When considering challenges to the weight of the evidence, we apply the following standard of review:

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses.

Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an

appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Talbert**, 129 A.3d 536, 545-46 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016) (quotation marks and citations omitted). "In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Id.** At 546. (quotation marks and citations omitted). It is well-settled that we cannot substitute our judgement for that of the trier of fact. **Id.** At 545. "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted). Furthermore, the weight of the evidence is exclusively for the finder of fact who is free to believe all, part or none of the evidence and to determine the credibility of the witness. **Commonwealth v. Shaffer**, 40 A.3d 1250, 1253 (Pa. Super. 2012).

Here, Garlitz asks us to grant him a new trial on the grounds that Trooper Hollibaugh initially stated that Layton Road ran from east to west rather than north to south and that Garlitz turned left off of Layton Road rather than right. However, at trial, Trooper Hollibaugh stated that the physical evidence he observed indicated that the ATV operated by Garlitz was operated on a public road before turning into a field and impacting a driveway. N.T.

Trial, 7/8/16 at 34-35. The jury chose to believe Trooper Hollibaugh's testimony, even in light of his inconsistencies regarding both cardinal and relative directions. Moreover, such inconsistencies are not so tenuous, vague and uncertain as to shock our sense of justice. ***Talbert***, ***supra***.

Judgment of sentence reversed. Cased remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/19/2017</u>