J-A02037-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| TERRI RAE GUSTAFSON, | |
| Appellee | No. 807 WDA 2017 |

Appeal from the Order Entered May 10, 2017
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s): CP-33-CR-0000589-2016

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                          FILED APRIL 06, 2018

The Commonwealth appeals from the order granting the motion to suppress filed by Appellee, Terri Rae Gustafson.  Because the trial court adopted a per se approach to the O'Connell warnings,[1] we determine the trial court erred by failing to evaluate the record under a totality of the circumstances standard.  We therefore reverse the suppression order and remand.

Pennsylvania State Trooper Danielle M. Marshall Hoare responded to a motor vehicle accident where Ms. Gustafson "t-boned" another vehicle. Arriving at the scene, Trooper Marshall observed that Ms. Gustafson appeared

_____

[1] Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell, 555 A.2d 873 (Pa. 1989).

confused and disoriented, and smelled strongly of alcohol. Trooper Marshall asked Ms. Gustafson to submit to a field sobriety test to which she agreed. Ms. Gustafson performed two HGN tests, one inside of her car and one outside. The results of both tests indicated that Ms. Gustafson was intoxicated.

Ms. Gustafson further agreed to participate in the "walk-and-turn" test. However, Trooper Marshall, concerned for Ms. Gustafson's safety, decided against conducting any further motor skills tests because Ms. Gustafson was so unsteady on her feet. Instead, she asked Ms. Gustafson to take a Preliminary Breath Test ("PBT"). Ms. Gustafson, understanding the purpose of the test, once again complied.

At the scene of the accident, Trooper Marshall had a discussion with Ms. Gustafson about taking her to the hospital to have a blood draw. Ms. Gustafson continued to be agreeable and indicated that she was willing to have a blood draw. Trooper Marshall then handcuffed Ms. Gustafson, placed her in the police vehicle and transported her to the hospital. During the ride to the hospital, Ms. Gustafson continued to be cooperative and expressed her gratitude to Trooper Marshall for treating her so well.

After arriving at the hospital, Trooper Marshall read Ms. Gustafson the following O'Connell warnings:

> If you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subjected to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed

if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a maximum fine $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.

Ms. Gustafson then acquiesced to the blood draw, and signed the DL-26 form confirming her consent.

Ms. Gustafson filed a motion to suppress the blood test results. The trial court held a hearing, and ultimately granted Ms. Gustafson's motion and suppressed the evidence. The Commonwealth filed a timely notice of appeal and raised the following issue:

Whether the suppression court erred in finding that [Ms. Gustafson's] consent to the drawing of her blood was not voluntary because the trooper read her an invalid warning prior to the drawing of blood where [Ms. Gustafson] had already agreed to give a preliminary breath sample and consented to the blood draw prior to being read said warning.

Commonwealth's Brief at 3.

When reviewing suppression rulings, this court's standard of review is "limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." Commonwealth v. Bomar, 826 A.2d 831, 842 (Pa. 2003). We are constrained to consider only the evidence presented at the suppression hearing. Commonwealth v. Haines, 168 A.3d 231, 234 (Pa. Super. 2017) (citing, In re L.J., 79 A.3d 1073, 1085-87 (Pa. 2013). Because Ms. Gustafson succeeded on her motion to suppress, we must only consider Ms. Gustafson's evidence and the Commonwealth's evidence, to the extent that the

Commonwealth's evidence is not contrary to Ms. Gustafson's evidence "when read in the context of the record as a whole." Commonwealth v. Bomar, 826 A.2d 831, 842 (Pa. 2003).

The United States Supreme Court has held that a state statute may not criminalize the refusal to submit to a blood test in the absence of a warrant or applicable exception because, while the Fourth Amendment allows for warrantless breath tests incident to an arrest for drunk driving, warrantless blood tests incident to an arrest violate the Fourth Amendment. Birchfield v. North Dakota, 136 S. Ct. 2160, 2173, 2185 (U.S. 2016). Implied consent laws are a "condition of the privilege of driving on state roads" which require motorist to cooperate with blood alcohol testing. Birchfield, 136 S. Ct. at 2186, 2166. Implied consent laws additionally "impose penalties on motorists who refuse to undergo testing when there is sufficient reason to believe they are violating the State's drunk-driving laws." Id. Although it is permissible to impose civil and evidentiary penalties on those who refuse blood testing, it is unconstitutional to criminalize the refusal to consent to a blood test absent a warrant because one cannot freely consent to a blood test knowing that the consequence of refusal is a criminal offense.[2] Id. at 2185-86.

---

[2] The United States Supreme Court had issued the Birchfield opinion only two days prior to the events that lead to the present case. As such, Trooper Marshall was unaware of the high court's decision and had no reason to consider the necessity of a search warrant to obtain a blood draw, or that paragraph 4 of the DL-26 form was a violation of the Fourth Amendment.

In Commonwealth v. Evans, 153 A.3d 323, 331 (Pa. Super. 2016), this Court applied the Birchfield decision to Pennsylvania's applicable statutory scheme, which, at that time, enhanced criminal penalties for a person convicted of a DUI, if that person had refused to submit to a blood test. In Evans, we held that the O'Connell warnings violated Birchfield, and, as such, determined the implied-consent warnings were partially inaccurate. Id. at 331. We vacated the sentence and remanded to the trial court to determine whether under the totality of the circumstances approach, the consent was valid. Id.

To determine whether an individual validly consented to a chemical test, the Supreme Court of Pennsylvania has articulated the following standard:

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

Commonwealth v. Smith, 77 A.3d 562, 573 (Pa. 2013).

The Commonwealth argues that Ms. Gustafson's consent was voluntary and occurred long before Trooper Marshall issued the O'Connell warnings. The Commonwealth maintains that Ms. Gustafson was continuously

cooperative and appreciative towards Trooper Marshall, that she submitted to all of the field sobriety tests and the PBT test the trooper administered, and that she agreed to a blood draw before being arrested and read the O'Connell warnings. Thus, the Commonwealth argues, Ms. Gustafson's consent was untainted and valid. The Commonwealth asserts that the suppression court put "talismanic significance" on the fact that Trooper Marshall read Ms. Gustafson the O'Connell warnings and that it failed to properly weigh other facts that indicated her consent was indeed voluntary. Commonwealth Brief at 8.

In this case, Ms. Gustafson consented to the warrantless blood draw both before and after Trooper Marshall informed her that "If you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subjected to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol." The trial court found that although Gustafson's compliance was without question voluntary, up to the point that the O'Connell warnings were read, "the Court cannot unreservedly determine that paragraph four's inherently coercive language did not contribute to her ultimate decision to submit to a blood test." Trial Court Opinion, 05/10/2017, at 3.

Here, we interpret the trial court language as applying a per se rule and deciding that, the O'Connell warning, in and of itself, when read, invalidated consent to a blood draw. This conclusion runs afoul of a "totality of the circumstances" evaluation. Many of the facts presented here suggest that Ms. Gustafson's consent was not coerced but could, nevertheless, have been involuntary. The scope of Ms. Gustafson's consent must be examined through an objective lens to determine how a reasonable person would understand her situation. Commonwealth v. Smith, 77 A.3d 562, 573 (Pa. 2013).

In this case, the suppression court's opinion did not weigh the facts that were suggestive of valid consent against those facts that did not. Instead, it found that introducing the O'Connell warnings here automatically invalidated Ms. Gustafson's consent. The O'Connell warnings are but one factor under the totality of the circumstances standard when evaluating the scope of consent.

Because the trial court did not employ the totality of the circumstances standard, we must remand for a determination as to whether under the totality of the circumstances, Ms. Gustafson's consent to the blood draw was voluntary.

Order vacated, case remanded and jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/6/2018</u>