J-A29012-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN M. CERNICK | : | |
| | : | |
| Appellant | : | No. 473 WDA 2021 |

Appeal from the Judgment of Sentence Entered March 22, 2021
In the Court of Common Pleas of Crawford County Criminal Division at
No(s): CP-20-CR-0000073-2020

BEFORE: BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED:  January 13, 2022**

Appellant, John M. Cernick, appeals from the judgment of sentence of 72 hours' to 6 months' incarceration, imposed following his conviction on two counts of driving under the influence of a controlled substance (DUI), 75 Pa.C.S. § 3802(d)(1)(i) and (d)(1)(iii).   Herein, Appellant challenges the denial of his motion to suppress the results of a warrantless blood draw.  After careful review, we affirm.

The facts of this case are not in dispute for purposes of this appeal. Corporal Greg Hoover of the Pennsylvania State Police (PSP) conducted a traffic stop of Appellant's daughter, an unlicensed driver.  N.T., 11/25/20, at 6-7.  Corporal Hoover ultimately called Appellant and "asked him if he could come to the scene to pick her up…."  *Id.* at 8.  Corporal Hoover noticed that

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant's speech was slow on the phone and advised him not to come unless he was sober. *Id.* Appellant arrived 20-30 minutes later, driving a Ford pickup truck. *Id.* at 9, 18.

Corporal Hoover's suspicion of Appellant's intoxication only increased upon Appellant's arrival at the scene. The officer observed that Appellant "was just slow to answer questions and he didn't really want to answer questions. And when he did, it was just slow speech and [he] just kept kind of looking around and never really had direct eye contact with me." *Id.* at 10. Further, Corporal Hoover got the impression that Appellant "didn't seem too concerned really about … the whole situation. I mean, just the way he was—his slow speech. It was almost as if he was—like he was tired and just—his actions were very slow." *Id.* Upon further questioning, Appellant denied that he had been drinking. *Id.* at 10-11.

Appellant consented to field sobriety tests, although he told Corporal Hoover that he was tired and that he had issues with his back. *Id.* at 12. Corporal Hoover indicated that Appellant showed further signs of impairment during the tests. *Id.* at 12-15. Additionally, the officer stated that Appellant had glossy and bloodshot eyes, and that "the top of his tongue was green." *Id.* at 15. These signs indicated to Corporal Hoover the possibility that Appellant was under the influence of marijuana. *Id.* When Corporal Hoover asked Appellant if he had recently smoked marijuana, Appellant replied that it had "been a while." *Id.* at 16.

Corporal Hoover arrested Appellant upon suspicion of DUI and transported him to Corry Hospital, where Appellant was read "the warning on the DL-26[B] [form] *verbatim*…." **Id.** at 17. Subsequently, both Corporal Hoover and Appellant signed the form. **Id.** The DL-26B form warned Appellant, *inter alia*, as follows:

> It you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. **If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.**

Commonwealth's Exhibit No. 2 (attached to Appellant's Brief as Appendix B) (emphasis added).

The Commonwealth charged Appellant with two counts of DUI.[1] Appellant filed a motion seeking suppression of the results of the blood draw, which had shown that Appellant had both active and secondary metabolites of marijuana in his system. **See** N.T., 11/25/20, at 30.[2] Specifically, Appellant argued that, under **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016), and **Commonwealth v. Evans**, 153 A.3d 323 (Pa. Super. 2016), the DL-26B form's warning regarding a potential restoration fee of $2,000 constituted a

---

[1] The Commonwealth also charged Appellant with careless driving, 75 Pa.C.S. § 3714, but he was not convicted of that offense.

[2] The parties stipulated to the results of the blood test. **Id.**

- 3 -

threat of a criminal punishment, rendering his consent to the blood test involuntary. *See* Appellant's Omnibus Pretrial Motion, 3/3/20, at 4 ¶ 14.

The trial court issued an order and opinion denying Appellant's motion to suppress on April 23, 2020. The court ruled without the benefit of a suppression hearing, stating that resolution of the suppression motion "did not require a hearing or argument, even assuming the truth of all factual averments therein." Trial Court Opinion (TCO), 4/23/20, at 1 n.2.[3] Following a non-jury trial held on November 25, 2020, the trial court found Appellant guilty of both counts of DUI, and not guilty of careless driving. The DUI offenses merged for sentencing purposes. On March 22, 2021, the trial court sentenced Appellant as stated above.

Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion on April 25, 2021.[4] Appellant now presents the following question for our review: "Was Appellant's consent to the warrantless blood draw rendered unknowingly, unintelligently[,] or involuntarily, and was it otherwise the product of intimidation, coercion[,] and duress?" Appellant's Brief at 2.

---

[3] Pa.R.Crim.P. 581(E) mandates that a trial court schedule a hearing "in accordance with Rule 577" in response to a motion to suppress. Rule 577(A)(2) confers general discretion to a trial court to determine whether a hearing is required upon the filing of any motion. Appellant does not contest the trial court's decision to rule without the benefit of a hearing in this appeal.

[4] In its Rule 1925(a) opinion, the trial court indicated that it was relying on the reasoning set forth in the TCO for denying Appellant's suppression motion. *See* Rule 1925(a) Opinion, 4/25/21, at 1-2.

Appellant asks this Court to reverse the order denying his motion to suppress the blood draw.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783–84 (Pa. Super. 2012) (cleaned up).

Specifically, Appellant maintains that his consent to the warrantless blood draw in this case was invalid under *Birchfield* and *Evans*, arguing that the potential of a $2,000 restoration fee referenced in the DL-26B "is so punitive in purposes and effect as to violate [A]ppellant's state and federal right to be free from unreasonable warrantless searches and seizures." Appellant's Brief at 4. In *Birchfield*, the Supreme Court of the United States concluded that "the search incident to arrest doctrine does not justify the warrantless taking of a blood sample[.]" *Birchfield*, 136 S.Ct. at 2185. Furthermore, the *Birchfield* Court held "that motorists cannot be deemed to

have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

> Thereafter, this Court decided … *Evans* …, in which the appellant had … argued that his consent to blood testing after his arrest for DUI was coerced as he only consented after the police warned him that his refusal to submit to blood testing would result in harsher penalties upon conviction. Although the *Evans* [C]ourt recognized that Pennsylvania's implied consent law did not make refusal to submit to a blood test a crime, the panel emphasized that the law "undoubtedly impose[s] criminal penalties on the refusal to submit to a test." *Evans*, 153 A.3d at 331 (quoting *Birchfield*, 136 S.Ct. at 2185–86). This Court pointed … to the DUI penalty provisions set forth in 75 Pa.C.S.[] § 3804:

>> Section 3804(c) provides that an "individual who violates [S]ection 3802(a)(1)[, DUI, general impairment] and refused testing of blood" is punished more severely than an individual who commits the stand-alone DUI, general impairment offense under Section 3802(a)(1)—and to the same extent as an individual who violates Section 3802(c), relating to DUI, highest rate of alcohol. 75 Pa.C.S.[] § 3804(c). As such, *Birchfield* controls the case at bar.

> *Id.*

> Since the appellant in *Evans* had argued that he agreed to submit to blood testing only after being informed that harsher penalties would apply if he refused, this Court held that the officer's advisory to Evans was "partially inaccurate" as *Birchfield* prohibits states from imposing criminal penalties for the refusal to submit to blood testing. [*Id.*] at 331. As a result, this Court vacated [Evans]'s sentence and the suppression order and remanded with instructions for the trial court to reevaluate the voluntariness of [his] consent in light of this inaccurate warning and the totality of the circumstances.

*Commonwealth v. Smith*, 177 A.3d 915, 921 (Pa. Super. 2017).

> Instantly, Appellant argues that he

> consented to a blood draw only after he was read Form DL-26[B] and advised that refusal to consent would result in certain penalties, including "a restoration fee of up to $2,000."

- 6 -

> [Appellant]'s consent was invalid under **Birchfield** and **Evans**. Despite the General Assembly's categorizing the $2,000 assessment as a "civil" penalty and labeling it a "fee," it is actually a fine, *i.e.*, criminal punishment. [Appellant], therefore, only consented to a blood draw upon being threatened with criminal punishment.

Appellant's Brief at 6 (citation omitted). Thus, Appellant contends that, like the defendant in **Evans**, he is entitled to relief because the warning he was read from the DL-26B form misrepresented the consequences of refusal by presenting a *de facto* criminal punishment as a civil restoration fee.

The trial court rejected the premise of Appellant's claim that the potential $2,000 fee was more akin to a criminal punishment than a civil penalty. Applying the seven-factor test set forth in **Kennedy v. Mendoza-Martinez**, 372 U.S. 144 (1963), the trial court found that most of the **Mendoza-Martinez** factors weighed against finding the potential $2000 restoration fee to be punitive rather than civil in nature. **See** TCO at 10 ("On balance, therefore, [the potential $2,000 fee] is not so punitive as to negate its designation as a civil penalty."). Consequently, the trial court determined that there is "no merit to [Appellant]'s argument that his consent was based upon inaccurate warnings." **Id.** at 11.

In supporting the reasoning of the trial court, the Commonwealth notes that this Court rejected similar arguments concerning the restoration fee in two recent, but non-precedential decisions in **Commonwealth v. Verbeck**, 253 A.3d 266 (Pa. Super. 2021) (unpublished memorandum), and **Commonwealth v. Smith**, 245 A.3d 1078 (Pa. Super. 2020) (unpublished

memorandum).[5]  The Commonwealth urges this Court "to follow the rationale in these previous cases…."  Commonwealth's Brief at 12.

We agree with the trial court that the restoration fee referenced in the DL-26B form does not constitute a *de facto* criminal punishment and, in reaching that conclusion, we adopt the trial court's thorough and well-reasoned analysis as our own.[6]  ***See*** TCO at 3-11.  Consequently, because the restoration fee is not a *de facto* criminal punishment despite its designation as a civil penalty, we conclude that Appellant is not entitled to relief under ***Birchfield*** and ***Evans***.  Thus, we conclude that the trial court did not err in denying Appellant's motion to suppress the results of the warrantless blood draw.

Judgment of sentence ***affirmed***.

Judge Bowes joins this memorandum.

Judge Pellegrini concurs in the result.

_____

[5] "Non-precedential decisions … may be cited for their persuasive value." Pa.R.A.P. 126(b)(2).

[6] Although this Court's decisions in ***Verbeck*** and ***Smith*** also concluded that the potential $2,000 restoration fee mentioned in form DL-26B is a civil penalty rather than a criminal punishment, those decisions addressed somewhat different arguments than those presented by Appellant. Accordingly, as Appellant's arguments were more directly addressed by the trial court in its analysis under ***Mendoza-Martinez***, we do not rely on either ***Verbeck*** or ***Smith*** for their persuasive value in reaching our disposition in this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/13/2022