J-A27027-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ASHLEY RENE STEVENSON | : | |
| | : | |
| Appellant | : | No. 685 WDA 2017 |

Appeal from the Judgment of Sentence April 13, 2017
In the Court of Common Pleas of Mercer County Criminal Division at No(s):
CP-43-CR-0001428-2016

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                      FILED FEBRUARY 9, 2018

Ashley Rene Stevenson ("Appellant") appeals from the judgment of sentence following her conviction for Second Offense Driving Under the Influence ("DUI") (highest rate).[1]  We affirm.

Before we address the merits of Appellant's appeal, we first consider the ramifications of her failure to file a statement or errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Although Appellant failed to file her 1925(b) Statement, she brought an unstamped copy of it to the post-appeal conference on June 9, 2017.  Appellant, however, failed to file that Statement as there is no docket entry memorializing the filing of the Statement and there is no such Statement in the record.  Despite Appellant's

_____

[1]  75 Pa.C.S. § 3802(c).

failure to file a Statement, it appears Appellant served a copy of the Statement on the trial court, as that court authored an opinion addressing the two issues raised therein.

Failure to file a Rule 1925(b) Statement constitutes per se ineffectiveness of counsel. See Commonwealth v. Scott, 952 A.2d 1190, 1192 (Pa. Super. 2008). Pursuant to Pa.R.A.P. 1925(c)(3), "If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been per se ineffective, the appellate court shall remand for the filing of a Statement nunc pro tunc and for the preparation and filing of an opinion by the judge." On October 12, 2017, in the interest of judicial economy and not to forestall further delay in the disposition of the appeal, this Court ordered Appellant to file the outstanding Rule 1925(b) Statement within five days of the date of the order. Order, 10/12/17. Appellant complied, and we will now address the merits of the appeal.

We summarize the history of this case as follows. Officer Matthew Ran of the Grove City Police Department stopped Appellant on August 2, 2016 at approximately 1:40 a.m. Notes of Testimony ("N.T.") (Omnibus hearing) 2/8/17, at 4. Officer Ran followed Appellant for more than one mile but less than two miles prior to stopping her. Id. at 11. In that time, he witnessed Appellant driving in the center of an unlined roadway. Id. at 5. He further observed her make several jerking corrective motions on a lined road and

observed Appellant cross over the center yellow line three times. Id. at 8–9.

Following field sobriety tests, Appellant was arrested, and Officer Ran transported her to the Grove City Medical Center and read her the revised version of the DL-26 Form ("revised DL-26 Form")[2]. N.T. (Omnibus Hearing), 2/8/17, at 13. The revised DL-26 Form includes the following language:

> It is my duty as a police officer to inform you of the following: You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code. I'm requesting that you submit to a chemical test of blood. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence you will be suspended for up to 18 months. You have no right to speak to an attorney or anyone else before you decide whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings, or if you remain silent when asked to submit to a blood test, you will have refused the test.

N.T. (Omnibus Hearing), 2/8/17, at 13. Officer Ran did not provide any other information regarding the ramifications of taking or refusing the blood test to Appellant. Id. at 21. Appellant signed the revised DL-26 Form and

_____

[2] The revised DL-26 Form, "Chemical Testing Warnings and Report of Refusal to Submit to a Blood Test as Authorized Section 1457. . ." is known as the Implied Consent Form and informs the arrestee of the penalties to which they could be subjected if they refuse to consent to a blood draw following arrest for DUI. See, e.g., Penndot v. Weaver, 912 A.2d 259, 261 (Pa. 2006)

consented to the blood draw. Id. at 15. Her blood alcohol level was .246 percent. Appellant's Brief at 12.

Prior to trial, Appellant filed an omnibus pretrial motion in which she sought to suppress all evidence from the traffic stop because Officer Ran lacked probable cause to stop Appellant's vehicle. Appellant also moved to suppress the warrantless blood draw because she alleged it violated her rights under Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution. She further argued the warrantless blood draw was a violation of the United States Supreme Court's holding in Birchfield v. North Dakota, 136 S.Ct. 1535 (2016).[3] Finding the traffic stop was proper and Appellant's consent was valid, the trial court denied Appellant's motion.

On April 13, 2017, following a bench trial, the trial court found Appellant guilty of DUI, highest rate of alcohol. The trial court sentenced Appellant to ninety days to two years of incarceration and a mandatory fine of $1,500.00.

On appeal, Appellant presents two questions for our review:

_____

[3] In her omnibus pretrial motion, Appellant dedicated a single line to discussing Birchfield: "The Grove City Police failed to obtain a Search Warrant for the blood test in violation of the United States Supreme Court decision in Birchfield v. North Dakota, 136 S.Ct. 1535 (2016)." Appellant's Omnibus Pretrial Motion, 12/27/16, at 2 (unnumbered). Appellant did not provide any analysis of the manner in which Birchfield was relevant or controlling in her case.

1.  Did the court employ the wrong standard and err in finding the stop and seizure of [Appellant's] vehicle properly [sic]?

2. Does the newly revised DL-26 Form correct the statutory sentencing scheme to confirm [sic] with <u>Birchfield</u>?

Appellant's Brief at 7.

In support of her first issue, Appellant argues that the trial court erred when it found her traffic stop was lawful and denied her motion to suppress the evidence arising therefrom.  Appellant's Brief at 13. Our standard of review of the denial of a motion to suppress is well established:

> [Our] standard of review is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.  Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

Commonwealth v. Randolph, 151 A.3d 170, 175 (Pa. Super. 2016) (quoting Commonwealth v. Jones, 988 A.2d 649, 954 (Pa. 2010)).

In support of her appeal, Appellant alleges that the trial court erred in applying the reasonable suspicion standard to the stop and argues that the trial court should have required the police officer to articulate probable cause

for the traffic stop. Appellant's Brief at 13–14. (citing Commonwealth v. Feczko, 10 A.3d 1285 (Pa. Super. 2010)). Specifically, Appellant argues that was she stopped for a violation of 75 Pa.C.S. § 3301, Driving on Right Side of Roadway, a traffic offense which required a showing of probable cause, not reasonable suspicion. Appellant is correct in that a showing of probable cause would be required if she were stopped for a violation of 75 Pa.C.S. § 3301. See Commonwealth v. Enick, 70 A.3d 843, 846 (Pa. Super. 2013) ("Where a vehicle stop has no investigatory purpose, the police officer must have probable cause to support it"). The record in this case, however, makes clear that Officer Ran stopped Appellant because, after observing her erratic driving, he suspected she was driving under the influence.

Indeed, at the hearing, Officer Ran testified "[W]ith the amount of things that I observed with the vehicle in motion, I thought I had a pretty reasonable suspicion that this might be a case of driving under the influence." N.T. (Omnibus hearing), 2/8/17, at 10–11. Under Pennsylvania law, "Stops based on reasonable suspicion are allowed for a stated investigatory purpose: 'to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.'" Commonwealth v. Chase, 960 A.2d 108, 116 (Pa. 2008) (quoting 75 Pa.C.S. § 6308(b)). See Feczko, 10 A.3d at 1289–1290 (discussing the difference between an investigative stop for suspected DUI, which requires

reasonable suspicion, versus other violations of the motor vehicle code, which require probable cause). Officer Ran specifically testified that he stopped Appellant because he suspected she was driving under the influence after he witnessed her driving in the center of the roadway, drifting near the curb or the center yellow line, and jerking back to the center of the lane numerous times. N.T. (Omnibus hearing), 2/8/17, 4–11.

As the trial court correctly stated in its opinion, "The investigable offense allowing for the standard of reasonable suspicion was the offense of driving under the influence." Trial Court Opinion, 7/7/17, at 1. Reasonable suspicion was the proper standard, and the trial court did not err in applying it. [4]

In support of her second issue, Appellant asserts that the trial court should have suppressed the results of her blood test because the revised DL-26 Form is "[d]eceitful and [m]isrepresentative of the [l]aw." Appellant's Brief at 16. Specifically, Appellant argues the revised DL-26 Form runs afoul of both Pennsylvania law and Birchfield, 136 S.Ct. 2160. Appellant's Brief at 15. We disagree.

_____

[4] Appellant's reliance on Commonwealth v. Enick, 70 A.3d 843 (Pa. Super. 2013), which she alleges stands for the proposition that a single minor traffic violation may be insufficient to establish probable cause for a traffic stop, is inapposite. Appellant herein stopped because the arresting officer witnessed her driving erratically and suspected she was driving while intoxicated, not because she committed a specific traffic violation.

Commonwealth v. Smith, __ A.3d __, 2017 PA Super 416 (Pa. Super. 2017) is directly on point. Therein, this Court discussed the admissibility of a blood test result when consent was obtained using the revised DL-26 Form, post Birchfield. As in the present case, the appellant was stopped for suspicion of DUI, arrested, and taken to a hospital for a blood alcohol test. Id. at *3. The appellant was read the revised DL-26 Form and consented to the blood test, the results of which showed that her blood alcohol level was over the legal limit. Id. The appellant sought to have the results of the blood draw suppressed, alleging that the warrantless seizure of her blood ran afoul of Birchfield and the Pennsylvania and United States Constitutions. Id.

On appeal, the appellant in Smith raised virtually identical claims to those raised by Appellant in this case, and this Court provided the following analysis in addressing those claims:

> In Birchfield, the High Court reviewed a consolidated case in which one of the petitioners, Steve Michael Beylund, was arrested for DUI and informed that the refusal to submit to blood testing constituted a crime itself under North Dakota law. Thereafter, petitioner Beylund argued that his consent had been coerced by the officer's warning. Relevant to the instant case, the United States Supreme Court held that a state may not "insist upon an intrusive blood test, but also … impose criminal penalties upon the refusal to submit to such a test." Birchfield, 136 S.Ct. at 2185. Moreover, the High Court emphasized that "motorists cannot be deemed to have consented to a blood test upon pain of committing a criminal offense." Id. at 2186. As petitioner Beylund had consented to a blood test only after police had erroneously informed him that he could be criminally penalized if he refused to do so, the Birchfield Court remanded

for the trial court to "reevaluate Beyland's consent given the partial inaccuracy of the officer's advisory." Id.

Nevertheless, the Birchfield Court emphasized that its holding did not apply to the imposition of civil penalties and evidentiary consequences upon motorists suspected of DUI who refused blood testing upon their arrest:

> It is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context. Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

Birchfield, 136 S.Ct. at 2185 (emphasis added) (citations omitted).

Thereafter, this Court decided Commonwealth v. Evans, 153 A.3d 323 (Pa.Super. 2016), in which the appellant had similarly argued that his consent to blood testing after his arrest for DUI was coerced as he only consented after the police warned him that his refusal to submit to blood testing would result in harsher penalties upon conviction. Although the Evans court recognized that Pennsylvania's implied consent law did not make refusal to submit to a blood test a crime, the panel emphasized that the law "undoubtedly impose[s] criminal penalties on the refusal to submit to a test." Evans, 153 A.3d at 331 (quoting Birchfield, 136 S.Ct. at 2185–86). This Court pointed out to the DUI penalty provisions set forth in 75 Pa.C.S.A. § 3804:

> Section 3804(c) provides that an "individual who violates section 3802(a)(1)[, DUI, general impairment] and refused testing of blood" is punished more severely than an individual who commits the stand-alone DUI, general impairment offense under Section 3802(a)(1)—and to the same extent as an individual who violates Section 3802(c), relating to DUI, highest rate of alcohol. 75 Pa.C.S.A.

- 9 -

> > § 3804(c). As such, Birchfield controls the case at
> > bar.
>
> Id.

> Since the appellant in Evans had argued that he agreed to
> submit to blood testing only after being informed that harsher
> penalties would apply if he refused, this Court held that the
> officer's advisory to Evans was "partially inaccurate" as
> Birchfield prohibits states from imposing criminal penalties for
> the refusal to submit to blood testing. Evans, 153 A.3d at 331.
> As a result, this Court vacated the appellant's sentence and the
> suppression order and remanded with instructions for the trial
> court to reevaluate the voluntariness of appellant's consent in
> light of this inaccurate warning and the totality of the
> circumstances.

> The instant case is factually distinguishable from Birchfield and
> Evans. To reiterate, the decision in Birchfield, which was
> controlling law at the time of Appellant's arrest, prohibited states
> from imposing criminal penalties upon an individual's refusal to
> submit to a warrantless blood test. Birchfield, 136 S.Ct. at
> 2185. The trial court in this case found Birchfield was
> inapplicable since [the appellant] was never advised that she
> would be subject to enhanced criminal sanctions upon refusal of
> blood testing. Our review of the record confirms this finding;
> both parties agree that Trooper Hogue only informed [the
> appellant] that her driver's license would be suspended if she
> refused blood testing. [The appellant] signed a DL–26 form
> acknowledging that she was advised of this particular
> consequence. This form does not contain any reference to
> enhanced criminal penalties DL–26 form. Thereafter, [the
> appellant] agreed to submit to blood testing, which revealed a
> blood alcohol level of 0.274. We cannot conclude that the trial
> court erred in denying [the appellant's] suppression motion that
> vaguely cited to Birchfield.

Commonwealth v. Smith, 2017 PA Super 416, at *4–*6 (footnote

omitted). The reasoning in Smith is sound and compels a similar result in

this case. Indeed, in the instant case the Appellant was read the revised DL-

26 Form and was informed that she was subject to the civil penalty of

license suspension if she refused to consent. She was not informed that she would be subject to additional jail time or any other sort of criminal enhancement. Thus, we find that the trial court did not err when it denied Appellant's motion to suppress.

Finally, Appellant argues throughout her brief that because the Pennsylvania legislature had not amended the statutory provisions that allow for enhanced criminal penalties for failure to refuse a blood test, Appellant remained subject to enhanced criminal penalties if she refused the blood test. Appellant's Brief at 21. Appellant contends that "her consent to the blood test was based upon misrepresentation and deceit in the [revised] DL-26 [F]orm tantamount to implied coercion, in that she submitted to the warrantless blood test only on pain of enhanced criminal penalties." Id. at 20. Because Appellant had a previous DUI, she claims she was aware of the enhanced criminal penalties and asserts that "all motorists are presumed to know the law." Id. at 19–20.

Appellant's argument lacks merit. As the trial court correctly found, the revised DL-26 Form is a correct statement of the law following the decision of the Supreme Court of the United States in Birchfield. Trial Court Opinion, 7/7/17, at 1–2. The revised DL-26 Form does not warn of any enhanced criminal penalties for refusal to consent to a blood test because Birchfield declared such enhancement unconstitutional. See Smith, 2017 PA Super. 416, at *6. ("To reiterate, the decision in Birchfield, which was

- 11 -

controlling law at the time of Appellant's arrest, prohibited states from imposing criminal penalties upon an individual's refusal to submit to a warrantless blood test.").

Indeed, it is well established that when a statute is deemed unconstitutional, it is ineffective for any purpose and "it is as if it were never enacted." Glen-Gery Corp. v. Zoning Hearing Bd. Of Dover Tp., 907 A.2d 1033, 1043 (Pa. 2006). See also Commonwealth v. Giron, 155 A.3d 635, 637 (Pa. Super. 2017) ("In this case, we hold that, pursuant to Birchfield v. North Dakota, a defendant who refuses to provide a blood sample when requested by police is not subject to the enhanced penalties provided in 75 Pa.C.S. § 3803-3804") (citation omitted); Commonwealth v. Evans, 153 A.3d 323, 331 (Pa. Super. 2016) (finding that police officer's warning that the appellant could be subject to criminal penalties for refusing to consent to a blood draw was an incorrect statement of the law after the United States Supreme Court handed down Birchfield); Fornwalt v. Follmer, 616 A.2d 1040, 1042 (Pa. Super. 1992) (finding that where the Supreme Court of Pennsylvania held a portion of a statute unconstitutional, that portion is a nullity.). Thus, the language contained in the revised DL-26 Form was a correct statement of the law when Officer Ran read it to Appellant.

The revised DL-26 Form correctly reflects the law in accordance with Birchfield.[5]  In the instant case, Officer Ran properly informed Appellant of the civil penalties to which she would be subject, namely the suspension of her license, if she refused the blood draw and Appellant consented.  The trial court did not err in denying Appellant's motion to suppress the results of her blood alcohol test.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/9/2018

_____

[5] We further note that if Officer Ran had improperly warned Appellant of enhanced criminal penalties after Birchfield was handed down, that would have constituted an incorrect statement of the law, which could have rendered her consent invalid.  See Commonwealth v. Evans, 153 A.3d 323 (Pa. Super. 2016).