J. S12039/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1196 MDA 2017 |
| | : | |
| ANTHONY M. BUNTON | : | |

Appeal from the Order Entered June 30, 2017,
in the Court of Common Pleas of Centre County
Criminal Division at No. CP-14-CR-0000507-2017

BEFORE:  LAZARUS, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 25, 2018**

The Commonwealth appeals from the June 30, 2017 order entered by the Court of Common Pleas of Centre County granting Anthony M. Bunton's (hereinafter, "appellee") omnibus pre-trial motion to suppress.  After careful review, we reverse and remand for further proceedings consistent with this memorandum.

The suppression court provided the following factual history:

> [Appellee] was arrested on December 18, 2016 by Pennsylvania State Trooper Timothy Nicklas. Trooper Nicklas had probable cause to arrest [appellee] and request a blood draw.  [Appellee] asked Trooper Nicklas if he was allowed to refuse the test and was told Trooper Nicklas would "read that once [they got to the hospital."]  Within the required two hour time period, [appellee] was taken to Mount Nittany Medical Center for the blood draw. [Appellee] signed the DL-26B form after it was read

> to him. Trooper Nicklas did not threaten or coerce [appellee] to sign the DL-26B form.
>
> [Appellee] has two prior convictions for driving under the influence ("DUI") in Texas and Tennessee. At the time of [appellee's] arrest, [appellee] would testify to knowing a blood test refusal would qualify him for a DUI charge at the highest rate. [Appellee's] knowledge was based on information from two friends who had been arrested for DUI in Pennsylvania and from [appellee's] own previous DUI charges. From [appellee's] discussions with these friends, he believed he would "get the book thrown" at him if he refused a blood test.

Suppression court order and opinion, 6/30/17 at 1-2 (some brackets in original).

Appellee filed an omnibus pre-trial motion to suppress evidence on May 23, 2017. The suppression court granted appellee's motion on June 30, 2017, following a hearing held on June 1, 2017. On July 28, 2017, the Commonwealth filed notice of appeal to this court. Pursuant to Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth certified that the June 30, 2017 order would either terminate or substantially handicap the prosecution. *See* Pa.R.A.P. 311(d) (permitting the Commonwealth to appeal from an interlocutory order if it certifies that the order will terminate or substantially handicap the prosecution). The suppression court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the Commonwealth timely complied. The suppression court filed an opinion pursuant to Pa.R.A.P. 1925(a) on

August 22, 2017, in which it incorporated its June 30, 2017 opinion and order.

The Commonwealth raises the following issue for our review:

> Did the [suppression] court err in granting Appellee's Motion to Suppress because, based on the totality of the circumstances, Appellee voluntarily consented to the blood draw because, ***inter alia***, he was not told he would face harsher criminal penalties for refusing to submit to a blood test?

Commonwealth's brief at 4.

We are held to the following standard when reviewing the Commonwealth's appeal of an order granting a suppression motion:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Miller***, 56 A.3d 1276, 1278-1279 (Pa.Super. 2012) (citations omitted).

In the instant appeal, the relevant facts are not in dispute. (***See*** stipulation docketed 6/1/17.) In its order and opinion, the suppression court reached the following legal conclusion:

> [A defendant] is expected and assumed to know the laws of this Commonwealth, including the criminal

penalties if he refused to consent to a blood draw. *See in re Kearney*, 7 A.2d 159, 161 (Pa.Super. 1939) (Ignorance of the law excuses no one, according to the ancient maxim, everyone being presumed to know the law.) [Appellee] was not made aware of his rights to refuse against a warrantless search, because he was not informed that the enhanced criminal penalties of 75 Pa.C.S. § 3804(c) would not be enforced. A citizen, like [appellee], with knowledge of the criminal penalties within the law would naturally expect them to be enforced to the fullest extent possible. Silence by the arresting officer is not synonymous with communication of [appellee's] rights, specifically that he would not face enhanced criminal penalties for refusal to consent to a search, without a warrant when the law says otherwise. Thus, the [suppression court] finds that [appellee] did not intentionally relinquish a known right or privilege when consenting to a blood draw as he was not informed that the enhanced criminal penalties of 75 Pa.C.S. § 3804(c) were constitutional.

Suppression court order and opinion, 6/30/17 at 5-6.

While the instant appeal was pending before this court, we decided *Commonwealth v. Miller*, ___ A.3d ___, 2018 WL 2057002 (Pa.Super. 2018). In *Miller*, we were presented with a virtually identical scenario. The defendant was arrested for suspicion of DUI after a motor vehicle accident. *Id.* at *1. Immediately after his arrest, the police transported the defendant to the hospital, where he was read the DL-26B form. *Id.* The DL-26B form "informed [the defendant] that he would face possible civil penalties for failing to submit to a blood test; however, the form did not include a warning regarding enhanced criminal penalties for refusing a blood test." *Id.* The defendant's argument in *Miller*, similar to appellee's argument here, was

that "because of a prior DUI arrest in which he received warnings pursuant to the prior DL-26 form, [the defendant] subjectively believed that the new form threatened enhanced criminal punishment if he refused to consent to a blood draw. *Id.* at *2.

The *Miller* court, citing a contemporaneous decision in *Commonwealth v. Robertson*, ___ A.3d ___, 2018 WL 2057000 (Pa.Super. 2018), rejected the suppression court's rationale for granting the defendant's suppression motion because "defendants are presumed to know case law in addition to statutory law," and the police do not have an affirmative duty to "inform defendants that they do not face enhanced criminal penalties if they refuse a blood test." *Miller*, 2018 WL 2057002 at *2, citing *Robertson*, 2018 WL 2057000 at *4-5. Accordingly, because the police do not have an affirmative duty to inform defendants that they do not face enhanced criminal penalties if they refuse a blood test and because defendants are presumed to know case law, we find that the suppression court erred as a matter of law when it granted appellee's suppression motion.

Just as the defendant in *Miller*, appellee advances alternative bases for affirmance.[1] The *Miller* court held as follows:

---

[1] Both the defendant in *Miller* and appellee in the instant appeal are represented by the same counsel, Brian Manchester, Esq. The briefs in the two cases are virtually identical, as the same issues were raised in both cases.

Under **Commonwealth v. Evans**, 153 A.3d 323 (Pa.Super. 2016), a trial court must consider the totality of the circumstances when determining if a defendant's consent to a blood draw was voluntary. **Id.** at 328 (citation omitted). As our Supreme Court explained:

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

**Commonwealth v. Gillespie**, 821 A.2d 1221, 1225 (Pa. 2003) (Eakin, J., opinion announcing the judgment of the court) (cleaned up), **citing Commonwealth v. Cleckley**, 738 A.2d 427, 433 n.7 (Pa. 1999).

First, [the defendant] relies heavily on **Commonwealth v. Myers**, 164 A.3d 1162 (Pa. 2017) in support of his contention that his consent was not voluntary. This argument, however, is based on a misunderstanding of the facts in **Myers**. In **Myers**, the defendant was unconscious. Hence, our Supreme Court held that the defendant was pharmacologically incapable of consenting to a blood draw. **Id.** at 1181. **Myers** does not implicate consent by individuals who are conscious, like [the defendant] in this case. Accordingly, [the defendant's] heavy reliance on **Myers** is misplaced.

Second, [the defendant] avers that he subjectively believed he would face increased criminal penalties if he refused a blood draw. [The defendant] avers that the last time he was arrested for DUI, prior to the

> Supreme Court of the United States' decision in ***Birchfield v. North Dakota***, 136 S.Ct. 2160 (2016), he was read the DL-26 form. As we explained in ***Robertson***, the DL-26 form included a warning that failure to submit to a blood draw would subject a defendant to enhanced criminal penalties. ***See Robertson***, 1493 MDA 2017 (slip op. at 2 n.1). [The defendant], therefore, argues that the trial court properly considered his subjective belief that enhanced criminal consequences attached to the refusal to consent to a blood draw.
>
> [The defendant's] argument fails in light of our Supreme Court's decision in ***Commonwealth v. Strickler***, 757 A.2d 884 (Pa. 2000). In ***Strickler***, our Supreme Court explained that, while a defendant's subjective belief regarding his or her ability to refuse to consent to a search may be considered as part of the totality of the circumstances, it is the police officer's express warnings which are most important when evaluating subjective belief. ***See id.*** at 901. In other words, incorrect subjective beliefs that are contradicted by a police officer's actual statements to a defendant diminishes the weight a trial court may place on the defendant's errant subjective belief.

***Miller***, 2018 WL 2057002 at *2.

Here, the parties stipulated that the police read appellee form DL 26B, which includes the following warning: "If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months." (Stipulation docketed on 6/1/17.) Pursuant to our holding in ***Miller***, appellee's reliance on his first-hand DUI experiences in Texas and Tennessee, and the experiences of his friends in Pennsylvania "cannot weigh

- 7 -

heavily against finding voluntary consent. Instead, an incorrect subjective belief based on failure to listen to explicit warnings from police officers is entitled to little, if any, weight when evaluating the totality of the circumstances surrounding a consent to search." *Miller*, 2018 WL 2057002 at *3.

The *Miller* court further states:

> We also find instructive a decision in a related field. As noted above, drivers face potential civil consequences for refusing to consent to a blood draw when police suspect they are driving under the influence. One of those civil penalties is driver's license suspension. If a driver knowingly refuses to submit to a blood draw, his or her driver's license is suspended for a specified period of time. In this context, our Supreme Court held that a driver's subjective belief about the accuracy of implied consent warnings is an insufficient basis to claim that refusal to submit to a blood test was involuntary. ***Nardone v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing***, 130 A.3d 738, 751 (Pa. 2015) (citation omitted). In light of ***Birchfield***, the Commonwealth Court has held that ***Nardone*** is still good law. ***Park v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing***, 178 A.3d 274, 281 (Pa.Cmwlth. 2018) (citation omitted). It would be inconsistent to allow for an incorrect subjective belief regarding the criminal consequences of not consenting to a blood draw to be weighed heavily against a finding of voluntariness while an incorrect subjective belief regarding the consequences of refusing a blood draw is not dispositive in the civil context. Instead, ***Nardone*** implies that an incorrect subjective belief regarding the consequences of not consenting to a blood draw is a minor factor when considering the totality of the circumstances.

> Repeat DUI offenders, owing to past legal transgressions, are not entitled to a benefit that would be unavailable to first-time DUI offenders. Essentially, [the defendant] argues that repeat DUI offenders should be held to a lower standard than first-time DUI offenders. The absurdity of the argument is self-evident. Individuals that repeatedly endanger the lives of innocent civilians should be held to a higher standard than those that make a first-time mistake. Our General Assembly has recognized this fact by providing harsher penalties for repeat DUI offenders. *See* 75 Pa.C.S.A. § 3804. We refuse to provide an incentive for repeat DUI offenders by making it easier for them to suppress blood draw evidence. Accordingly, we hold that [the defendant's] argument related to his subjective belief of possible increased criminal penalties is without merit.

*Miller*, 2018 WL 2057002 at *3.

In light of our holding in *Miller*, when considering the totality of the circumstances, we find that appellee's consent to a blood draw was voluntary. Accordingly, we reverse the suppression court's order granting appellee's omnibus pretrial motion to suppress and remand for further proceedings consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/25/18

- 9 -