J-A06010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
          v.   :
  :
  :
  :
MICHAEL S. HILL   :
  :
      Appellant   :   No. 1359 MDA 2018

Appeal from the Judgment of Sentence Entered July 19, 2018
In the Court of Common Pleas of Mifflin County
Criminal Division at No(s): CP-44-CR-0000709-2017

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI[*], J.

MEMORANDUM BY OTT, J.:           **FILED AUGUST 15, 2019**

Michael S. Hill appeals from the judgment of sentence imposed July 19,

2018, in the Mifflin County Court of Common Pleas. Prior to sentencing, the

court, sitting as fact-finder, convicted Hill of driving under the influence of

alcohol ("DUI") (general impairment/incapable of driving safely; second

offense) and DUI (highest rate of alcohol).[1] The court sentenced Hill to a term

of 90 days to five years' incarceration. On appeal, Hill claims the court erred

in failing to grant his motion to suppress his blood test results based on lack

of consent. **See** Sanders' Brief at 4. For the reasons below, we affirm the

judgment of sentence.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 75 Pa.C.S. §§ 3802(a)(1) and (c), respectively.

The trial court set forth the factual history as follows:

On September 9, 2017, at approximately 8:55 p.m., the Mifflin County Dispatch received a 911 call from Margaret Moore. Moore did not communicate with Mifflin County Dispatch during this call but the 911 Operator was able to record a conversation between Moore and another individual later identified as the Defendant, Michael Hill. From the substance of the conversation, Dispatch concluded that [Hill] was driving while under the influence of alcohol.

After the call was terminated, Dispatch placed a return call to Moore who indicated that she and [Hill] had arrived at their residence located at 13 Chapel Drive Lewistown, PA 17044. Moore further indicated that she and [Hill] were currently engaged in a verbal argument and Dispatch could discern [Hill] in the background acting belligerently and yelling profanities. When asked by Dispatch if a police response was required, Moore responded that "Either way it doesn't matter. He always tells them his side and they listen to him, so whatever, I don't care". In response, officers were dispatched to the residence.

At approximately 9:12 p.m., Officer Dustin Maxwell and Patrolman [Steven] Busch arrived at 13 Chapel Drive and observed [Hill] standing in his garage. Officer Maxwell approached [Hill] who appeared agitated at the presence of police at his home. Officer Maxwell observed that [Hill]'s eyes were blood shot, his speech slurred, that an odor of alcohol emanated from his person, and that he had apparently defecated himself. [Hill] indicated to Officer Maxwell that he had been home for approximately two hours. However, upon touching the hood of [Hill]'s car, Officer Maxwell observed the hood was warm to the touch. Moreover, per Patrolman Busch's discussion with Moore, she and [Hill] had been home for less than ten minutes before the officers arrived. Moore further confirmed that [Hill] had driven her home from Dave's Bottle Shop, severely intoxicated, after having been there since 7:30 a.m.

The responding officers asked [Hill] if he would submit to Field Sobriety Tests. [Hill] indicated he would not submit to any tests. [Hill] was placed under arrest and transported to Geisinger-Lewistown Hospital where he was read the chemical testing warnings from the Penn-Dot DL-26B form. [Hill] then agreed to a

blood draw. Said blood draw later indicated [Hill]'s blood alcohol concentration to be .332%.

Trial Court Opinion, 4/23/2018, at unnumbered 1-2.

Hill was subsequently charged with two counts of DUI and one count of careless driving. On March 14, 2018, Hill filed several omnibus pre-trial motions to suppress. The court held a hearing on the motions on April 12, 2018. Five days later, the court issued an order and contemporaneous opinion, denying Hill's various motions.[2] On May 24, 2018, a stipulated non-jury trial was held, at the conclusion of which the court found Hill guilty of the DUI crimes and not guilty of careless driving. On July 19, 2018, the court sentenced Hill to a term of 90 days to five years' incarceration, in addition to a fine of $1,500.00. This appeal followed.[3]

In his sole issue on appeal, Hill contends that his "purported consent to the blood draw at issue was not rendered knowingly, intelligently, or voluntary, and was the product of duress and coercion on the part of law enforcement such that all blood alcohol evidence must be suppressed from evidence at [t]rial." Hill's Brief at 14. Hill raises a plethora of allegations with

_____

[2] The order and opinion were dated April 17, 2018, but were not timestamped and docketed until April 23, 2018.

[3] On August 14, 2018, the trial court ordered Hill to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Hill filed a concise statement on August 28, 2018. The following day, the trial court issued a statement pursuant to Pa.R.A.P. 1925(a), indicating that it was relying on its April 23, 2018, opinion.

- 3 -

respect to his voluntariness argument, which we will attempt to summarize. First, Hill claims he "was in custody at the time he purportedly consented to the blood draw at issue, which [is a] factor [that] weighs against voluntariness." *Id.* at 16. Second, he states there were numerous coercive tactics employed by Officer Maxwell and Patrolman Busch, which "strongly suggest that [Hill]'s eventual consent to the blood draw at issue was not voluntary:"[4] (1) two police officers drove up his 50-foot driveway and entered his garage at night without his invitation or permission;[5] (2) the officers asked questions that were "clearly tailored to elicit incriminating evidence, including if [Hill] had been drinking and driving that day,"[6] and one officer put his hand on Hill's vehicle without any permission or consent; (3) after Hill indicated that he would not submit to any tests, Patrolman Busch attempted to persuade Hill to change his mind and threatened to take him to jail if he refused a blood draw;[7] and (4) Officer Maxwell read the DL-26B form to Hill while he was still in handcuffs and did not allow Hill to review the form or sign the document.[8] Third, Hill asserts "the fact that [he] knew of his right to refuse the warrantless

_____

[4]  Hill's Brief at 16.

[5]  *See id.*

[6]  *Id.* at 17.

[7]  *See id.* at 18-21.

[8]  *See id.* at 21-22.

- 4 -

blood draw actually weighs against voluntariness under these specific circumstances." *Id.* at 22 (emphasis removed). Fourth, Hill argues because the record "does not contain any evidence or testimony relative to [his] education and intelligence," this factor would be neutral. *Id.* at 23. Fifth, Hill states that "[b]ased on the degree and extent of [Hill]'s level of intoxication, common sense suggests that there can be no credible dispute that [Hill] (or anyone) would believe that no incriminating evidence would be found in his blood," and therefore, this factor weighs against voluntariness. *Id.* at 23-24. Lastly, Hill contends "the record supports a finding that [he] was agitated by the police entering h[is] property without his permission, and that he had no intention of voluntarily cooperating with law enforcement with respect to the DUI investigation at issue," and such a factor "weighs against the voluntariness of the consent at issue." *Id.* at 24.

Our standard of review regarding suppression challenges is well-settled:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the [trial court's] conclusions of law [] are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

**Commonwealth v. Shreffler**, 201 A.3d 757, 763 (Pa. Super. 2018) (internal citation omitted).

Moreover, we are guided by the following:  Both the "Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." **Commonwealth v. Evans**, 153 A.3d 323, 327 (Pa. Super. 2016), *quoting* **Commonwealth v. McAdoo**, 46 A.3d 781, 784 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013).  "The administration of a blood test, performed by an agent of, or at the direction of the government, constitutes a search under both the United States and Pennsylvania Constitutions." **Evans**, 153 A.3d at 327-328, *quoting* **Commonwealth v. Kohl**, 615 A.2d 308, 315 (Pa. 1992).  "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." **Commonwealth v. Strickler**, 757 A.2d 884, 888 (Pa. 2000).  "One such exception is consent, voluntarily given." **Id.** at 888-889 (citation omitted).

[A panel of this Court] set forth fundamental law with regard to warrantless blood draws and consent as follows:

In **Birchfield** [**v. North Dakota**, __ U.S. __, 136 S.Ct. 2160 (2016)], the Supreme Court of the United States held that criminal penalties imposed on individuals who refuse to submit to a warrantless blood test violate the Fourth Amendment (as incorporated into the Fourteenth

Amendment). Within one week of that decision, [the Pennsylvania Department of Transportation] revised the [standard consent form used by police, known as the] DL-26 form[,] to remove the warnings mandated by 75 Pa.C.S.A. § 3804 that theretofore informed individuals suspected of DUI that they would face enhanced criminal penalties if they refused to submit to a blood test in order to comply with **Birchfield**. [The] revised form [is] known as Form DL-26B[.]

\*\*\*

This Court subsequently held that [] enhanced criminal penalties [imposed] for failure to consent to a blood draw constituted an illegal sentence because of **Birchfield**. **See Commonwealth v. Giron**, 2017 PA Super 23, 155 A.3d 635, 639 (Pa. Super. 2017).

On July 20, 2017, Governor Thomas W. Wolf signed into law Act 30 of 2017, which amended 75 Pa.C.S.A. § 3804 to comport with **Birchfield**. Specifically, Act 30 provides for enhanced criminal penalties for individuals who refuse to submit to blood tests only when police have obtained a search warrant for the suspect's blood. **See** 75 Pa.C.S.A. § 3804(c). Hence, from July 20, 2017 onwards the DL-26B form conforms to the revised statutory law.

**Commonwealth v. Venable**, 2018 PA Super 329, 200 A.3d 490, 495 (Pa. Super. 2018) (original brackets omitted).

**Commonwealth v. Krenzel**, __ A.3 __, __, 2019 PA Super 159, \*6-7 (Pa. Super. May 20, 2019).[9]

In analyzing whether consent is voluntary, we note:

---

[9] We note that in the present matter, the updated DL-26 form ("Form DL-26B") was used and as explained *supra*, Officer Maxwell did not inform Hill that he would face enhanced penalties if he refused to submit. **See** Trial Court Opinion, 4/23/2018, at unnumbered 8-9. Accordingly, the dictates of **Birchfield** were complied with and Hill does not raise a **Birchfield** claim in his appeal.

In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

**Commonwealth v. Venable**, 200 A.3d 490, 497 (Pa. Super. 2018).

Furthermore, 75 Pa.C.S. § 1547 is relevant to our analysis, which states, in pertinent part:

**(a)** **General rule**.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section [...] (relating to driving under influence of alcohol or controlled substance)[.]

**(b)** **Civil penalties for refusal**.

(1)  If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person[.]

* * *

(2)  It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000; and

(ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547 (emphasis in original).  Moreover,

[o]ur Supreme Court examined Section 1547 in **Commonwealth v. Myers**, 640 Pa. 653, 164 A.3d 1162 (Pa. 2017), a case wherein the defendant who was arrested on suspected DUI charges was unconscious in the hospital when a police officer read him consent forms and then directed hospital personnel to conduct a blood draw.  The **Myers** Court determined:

[O]nce a police officer establishes reasonable grounds to suspect that a motorist has committed a DUI offense, that motorist "shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance."  75 Pa.C.S.A. § 1547(a). Notwithstanding this provision, Subsection 1547(b)(1) confers upon all individuals under arrest for DUI an explicit statutory right to refuse chemical testing, the invocation of which triggers specified consequences.  **See** 75 Pa.C.S.A. § 1547(b)(1) ("If any person placed under arrest for DUI is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted[.]").

Under this statutory scheme, a motorist placed under arrest for DUI has a critical decision to make. The arrestee may submit to a chemical test and provide the police with evidence that may be used in a subsequent criminal prosecution, or the arrestee may invoke the statutory right to refuse testing, which: (i) results in a mandatory driver's license suspension under 75 Pa.C.S.A. § 1547(b)(1); (ii) renders the fact of refusal admissible as evidence in a subsequent DUI prosecution pursuant to 75 Pa.C.S.A. § 1547(e); and (iii) authorizes heightened criminal penalties under 75 Pa.C.S.A. § 3804(c) if the arrestee later is convicted of DUI. In very certain terms, [the Supreme] Court has held that, in requesting a chemical test, the police officer must inform the arrestee of the consequences of refusal and notify the arrestee that there is no right to consult with an attorney before making a decision. **See** [**Com., Dept. of Transp., Bureau of Traffic Safety v.**] **O'Connell**, 521 Pa. 242, 555 A.2d [873,] 877-878 (Pa. 1989). "An arrestee is entitled to this information so that his choice to take a chemical test can be knowing and conscious." **Id.** at 878. The choice belongs to the arrestee, not the police officer.

**Myers**, 164 A.3d at 1170-1171 (some case citations, original brackets, and footnote omitted) (emphasis added). The **Myers** Court further noted that 75 Pa.C.S.A. § 1547 expressly "states that, '[i]t shall be the duty of the police officer' to inform the arrestee of the consequences of refusal." **Id.** at 1175 n.12, *citing* 75 Pa.C.S.A. § 1547(b)(2). Our Supreme Court held that "[t]his unambiguous statutory command leaves no doubt regarding the obligations of the police officer requesting the arrestee's submission to a chemical test." **Id.** (citation omitted).

**Krenzel**, ___ A.3 ___, ___, 2019 PA Super 159, *11-13.

Here, the trial court found the following, in pertinent part:

In this Court's opinion, Officers Maxwell and Busch had probable cause to warrant the belief that the offense of driving under the influence had been committed by [Hill]. Officers Maxwell and Busch arrived at [Hill]'s residence within minutes of receiving a radio call from Mifflin County Dispatch indicating [Hill] had been driving while under the influence of alcohol. Shortly after arriving at [Hill]'s residence, Officer Maxwell observed that

- 10 -

the hood of [Hill]'s car was warm to the touch and that the vehicle had recently been driven. Moore subsequently confirmed to Patrolman Busch that she and [Hill] had arrived at their residence less than ten minutes before the appearance of the officers. Finally, Officer Maxwell's testimony indicated that [Hill] was exhibiting clear signs of alcohol intoxication. Therefore, given the totality of the circumstances, the officers had probable cause to believe [Hill] had been driving under the influence.

Moreover, it is this Court's opinion that exigency existed to justify the warrantless entry of Officers Maxwell and Busch into [Hill]'s garage. First, [p]robable cause existed to warrant the belief that [Hill] had in fact committed the offense of driving under the influence. Second, given the potential danger driving under the influence poses to other motorists and pedestrians this Court considers the gravity of such an offense to be high. Third, it was clear to the responding officers that [Hill] was inside the premises as he was standing in his garage with the door open. Fourth, the officers peaceably made entry by first consulting with Moore outside the residence and then entering the garage. Finally, given that the evidence necessary to establish a defendant's guilt in a DUI related offense is a blood alcohol content test, there is a high likelihood that the evidence of [Hill]'s offense would have been destroyed in the time that it would have taken for Officers Maxwell and Busch to obtain a warrant.

In addition to the probable cause to warrant the belief that [Hill] had driven while under the influence, probable cause also existed to believe a potential domestic dispute was occurring. During the 911 calls to Mifflin County Dispatch, statements were made by Moore to indicate [Hill] was acting belligerently towards her. Further, on the Mifflin County Dispatch recording, [Hill] could be heard in the background of the call behaving aggressively and shouting profanities at Moore. When asked by Mifflin County Dispatch if a police response was necessary, Moore did not specifically refuse the offer, indicating only that it didn't matter. Given the serious threat domestic violence incidents pose, and the potential risk of harm to Moore's safety and well-being, it is this Court's opinion that Officers Maxwell and Busch had probable cause to believe a potential domestic dispute was occurring and that exigent circumstances existed to ensure the safety of Margaret Moore.

…

- 11 -

[Hill] argues that due to his elevated blood alcohol concentration, he was unable to give knowing, intelligent, and voluntary consent to the blood draw at Geisinger-Lewistown Hospital. However, pursuant to the Pennsylvania Crimes Code, a [d]efendant's voluntary intoxication or voluntary drugged condition is not a defense to a criminal charge. 18 Pa.C.S. § 308. Moreover, Pennsylvania Courts have held that "a driver arrested for driving under the influence of intoxicating liquor may not avoid the consequences of his refusal to submit to a breathalyzer test by claiming that he was incapable of making a knowing and conscious refusal by reason of his intoxication." ***Commonwealth v. Walthour***, 7 Phila. 467, 1982 Phila. Cty. Rptr. LEXIS 82 (Pa. C.P., 1982). The Court in ***Walthour*** opined that to hold otherwise would lead to the absurd result wherein the greater the degree of intoxication of a driver, the lesser his degree of accountability. ***Id.*** at 474.

This Court finds this rationale used in ***Walthour*** compelling and applicable to the facts of the current case. Here, Officer Maxwell read the warnings contained in the DL-26B form to [Hill] fully and in an appropriate manner and [Hill] subsequently consented to the blood draw. To allow [Hill] to claim that his intoxication precluded his consent being made knowingly, voluntarily, and intelligently would go against the legislative purpose of 75 Pa.C.S. § 1547.

Further, [Hill]'s testimony indicated a lucid and coherent recollection of the remainder of his interactions with Officers Maxwell and Busch on the night in question. [Hill] was able to recall the entirety of his interactions with the officers in his garage including his questions to the officers, his refusal of field sobriety tests, and the alleged coercive statements made by the officers. Thus, [Hill] would have this Court believe that his intoxication substantially affected him only during the short window of time during which Officer Maxwell read him the chemical testing warnings from the DL-26B form at Geisinger-Lewistown Hospital. Given [Hill]'s cogent testimony as to the remainder of the night, this Court finds such a contention difficult to accept.

…

This Court must conclude that [Hill] was aware of his right to refuse the chemical test as he was read the warnings on the DL-26B form prior to consenting to the blood draw. Thus [Hill]

had been explicitly informed of his right to refuse. Moreover, [Hill] refused to submit to field sobriety tests earlier in the evening which indicates to this Court an awareness of his right to refuse the officers' tests. Finally, the only evidence presented to substantiate [Hill]'s claim that his consent was involuntary was his testimony that coercive statements were made by the arresting officers in his garage. Therefore, this Court can only weigh the credibility of [Hill]'s testimony against the testimony of Officer Maxwell. Given [Hill]'s own statements as to his degree of intoxication, this Court finds his testimony to be less credible than the uncontroverted testimony of Officer Maxwell who denied making any coercive statements to [Hill] and denied having knowledge of any coercive statements made by Patrolman Busch to [Hill]. Therefore, this Court cannot accept that [Hill]'s decision to consent to the blood draw at Geisinger-Lewistown Hospital was accomplished through duress or coercion.

…

[T]his Court is not persuaded by [Hill]'s argument relating to the involuntariness of his consent based on Officer Maxwell's reading of the Penn-Dot DL-26B form and his lack of signature on said form. On June 23, 2016, the United States Supreme Court decided *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), which held that "a state may not impose criminal penalties on the refusal to submit to [a warrantless blood] test..." *Commonwealth v. Evans*, 153 A.3d 323, 331 (Pa. Super. 2016). Prior to the *Birchfield* ruling, the PennDOT Form DL-26 advised motorists that if they failed to consent to a blood draw, they would be subject to enhanced penalties under 75 Pa.C.S.A. §3804(c). The *Evans* Court found that the old form DL-26 warning was partially inaccurate, as it threatened enhanced penalties that were, in light of *Birchfield*, no longer appropriate. Therefore, in response to the *Birchfield* decision, Pennsylvania immediately amended the PennDOT Form DL-26B to state, *inter alia*, the following:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.

- 13 -

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

The amended form eliminated any reference to the enhanced criminal penalties imposed by Section 3804(c). Instead, the amended DL-26B form warns motorists that a refusal to submit to a blood test will result in a driver's license suspension.

…

This Court finds the consequence of [Hill]'s refusal, which entailed only the potential suspension of his operating privilege, was expressly stated in the DL-26B form, and that [Hill] was therefore capable of making a knowing and conscious decision. After being read the warning by Officer Maxwell, [Hill] consented to the blood draw. Moreover, at no time did Officer Maxwell indicate to [Hill] that he would face enhanced criminal penalties as outlined in 75 Pa.C.S.A. §3804(c) if the blood draw was refused. The lack of [Hill]'s signature on the DL-26B form alone does not persuade this Court that his consent was involuntarily given. Therefore, there is no evidence to suggest that [Hill]'s consent was the product of duress, coercion, or an overborn will. Based on the totality of the circumstances, this Court finds [Hill]'s consent to the requested blood draw was made knowingly, intelligently, and voluntarily.

Trial Court Opinion, 4/23/2018, at 3-10. We agree with the Court's analysis.

First, to the extent Hill argues the police conducted the blood draw while he was in custody, we "consider custodial status, but it is not dispositive." *Krenzel*, ___ A.3 ___, ___, 2019 PA Super 159, *9. Moreover, it bears reiterating that the Pennsylvania Supreme Court has previously stated: "In very certain

- 14 -

terms, this Court has held that, in requesting a chemical test, the police officer must inform the arrestee of the consequences of refusal and notify the arrestee that there is no right to consult with an attorney before making a decision." ***Myers***, 164 A.3d at 1171. ***See also Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell***, 555 A.2d 873 (Pa. 1989) (officer's warnings are the duty to inform drivers that they lack the right to speak with an attorney prior to deciding whether to consent to chemical blood draw).

Second, with respect to Hill's assertion that the police officers employed coercive tactics which caused Hill's consent to be involuntary, we note, as provided above, the trial court found the police officers possessed probable cause to believe Hill had been driving under the influence based on the totality of the circumstances, including Moore's statements to police and that Hill was exhibiting signs of intoxication, as well as evidence of both exigent circumstances necessitating a warrantless entry into the garage and a domestic dispute involving Hill and Moore.[10] ***See*** Trial Court Opinion, 4/23/2018, at unnumbered 3-4. Accordingly, the officers were lawfully permitted to be on his property despite the fact that he did not invite them or permit them to be there. ***See Commonwealth v. Dommel***, 885 A.2d 998 (Pa. Super. 2005) (combined circumstances created an exigency which

---

[10] It merits mention that on appeal, Hill does not raise a suppression argument, challenging the court's finding of probable cause.

justified the warrantless entry into a residence to arrest a defendant suspected of committing a DUI offense), *appeal denied*, 920 A.2d 831 (Pa. 2007); **Commonwealth v. Fickes**, 969 A.2d 1251 (Pa. Super. 2009) (warrantless entry into garage was permitted where police officer, who was in fresh pursuit, possessed probable cause to believe defendant had been driving under the influence, and blood alcohol content ("BAC") evidence would likely be lost by time a warrant was procured).

Furthermore, with regard to Hill's assertion that the officer threatened to take him to jail if he refused the blood test, the trial court found Hill's testimony to be "less credible than the uncontroverted testimony of Officer Maxwell who denied making any coercive statements to [Hill] and denied having knowledge of any coercive statements made by Patrolman Busch" to Hill. Trial Court Opinion, 4/23/2018, at unnumbered 7. We are bound by these credibility determinations, which are supported by the record. **See Shreffler**, 201 A.3d at 763.[11]

Additionally, to the extent Hill argues Officer Maxwell read the DL-26B form to him while he was still in handcuffs and did not allow Hill to review the form or sign the document, we note the following. The record does not

_____

[11] Moreover, to the extent Hill alleges Patrolman Maxwell asked Hill questions that were tailored to elicit incriminating evidence, including whether he had been drinking, and put his hands on Hill's car without permission to do so, we find these arguments to be meritless as Hill has failed to persuade us otherwise with these bald assertions.

indicate whether Hill was handcuffed at the time his blood was drawn though he did testify that after the officers arrested him, they placed his hands behind his back and handcuffed him prior to transporting him to the lab. *See* N.T., 4/12/2018, at 43. Nevertheless, without more information, we find it unlikely that one's blood could be drawn with his or her arms behind his or her back. Moreover, based on the totality of the circumstances, we agree with the trial court the "lack of [Hill]'s signature on the DL-26B form alone does not persuade this Court that his consent was involuntarily given." Trial Court Opinion, 4/23/2018, at unnumbered 10. Officer Maxwell testified that generally, he follows the same procedure every time when asking for an individual's consent to a blood draw test, and that after he reads the DL-26B form to the individual and they consent, he does not "normally" get them to sign. N.T., 4/12/2018, at 33. He also stated that if the individual refuses to complete the test, he does have the person sign the form. *Id.* at 32. On the the DL-26B form, Officer Maxwell signed the line indicating that he had done the following: "I certify that I have READ the above warnings to the operator regarding the suspension of his/her operating privilege and gave the operator an opportunity to submit to blood test." Commonwealth's Trial Exhibit #2, 4/12/2018, DL-26B Form at Side 1. Accordingly, we conclude that the officers did not utilize such tactics that were coercive and caused Hill's consent to be involuntary.

Third, with regard to Hill's complaint that he was aware of his right to refuse the warrantless blood draw and this factor goes against an indication of voluntariness, he points to the court's statement that Hill "would not submit to any tests." Trial Court Opinion, 4/23/2018, at unnumbered 2. In reviewing the statement of facts in *toto*, it is evident Hill misconstrues the court's recitation of the incident. The court was referring to the field sobriety tests and stating that Hill would not submit to any field sobriety tests. ***See id.*** Accordingly, Hill's argument has no merit and furthermore, such an argument regarding prior knowledge of the right to refuse does not demonstrate that his consent was involuntary.

Fourth, Hill points out the record does not contain any evidence pertaining to his education and intelligence. While we agree the record lacks any information regarding this factor, a review reveals there was no evidence suggesting Hill suffered any mental limitation or had a language barrier, which would impair his comprehension of the language provided in the DL-26B form rendering him incapable of providing voluntary consent to the blood draw.

Fifth, Hill alleges that based on his level of intoxication, he would believe that no incriminating evidence would be found in his blood and therefore, his consent was not voluntary. We agree with the trial court that voluntary intoxication is not "a defense to a criminal charge[.]" 18 Pa.C.S. § 308. Any subjective belief that no incriminating evidence would be found in one's blood due to voluntary intoxication does not weigh heavily against voluntariness.

Furthermore, the trial court found Hill presented a "lucid and coherent recollection" of the events in question, which weighs against his claim that he was too drunk to consent. Trial Court Opinion, 4/23/2018, at unnumbered 8.

Lastly, Hill complains that his own agitation at the time of the incident demonstrates he had no intention of voluntarily cooperating with the officers. Other than a very bald assertion, Hill presents no case law to support his contention. As such, we need not address this claim further.

Based on our review of the record in the present case, we conclude that the totality of the circumstances, clearly weigh in favor of finding that Hill provided knowing and voluntary consent to the blood draw. The only factor that weighs against a finding of voluntariness is that Hill was in custody, but there is no credible evidence that his consent to the blood draw was the product of duress, threats, or coercion on the part of the police officers. Hill agreed to submit to the test and underwent the blood draw. Therefore, we conclude no reasonable fact-finder could determine Hill's consent was involuntary. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Pellegrini joins this memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/15/2019